UNITED FIRE & CASUALTY
COMPANY, Appellee,

v.

Roger D. ACKER, Brett Spengler, Larry T. McDowell, a/k/a Larry Holloday, d/b/a Big River Harley Davidson, Fusako K. McDowell, a/k/a Fusako Holloday, John Jamison, Unknown Claimants Against Big River Harley Davidson, Motor Vehicle Dealer's Bond # 55–111095, State of Iowa, ex rel. Iowa Department of Transportation, Dealer License Bureau, Defendants,

Elworth Harley Davidson Sales
& Service, Inc., Appellant.

No. 94–1413.

Supreme Court of Iowa.

Dec. 20, 1995.

Jay T. Schweitzer and Timothy K. Wink of Schweitzer & Wink Law Offices, Columbus Junction, for appellant.

Kevin P. Shea of the Shea Law Offices, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this declaratory judgment action, we are asked to define the scope of our retail motor vehicle surety bond statute, Iowa Code section 322.4(7) (1991). We must decide whether the "any person" language in this section indemnifies a motor vehicle dealer who purchases at wholesale from another dealer and then suffers a loss. The district court concluded only consumers are indemnified under the statute. The court then granted summary judgment to the surety. The surety had issued the bond to the defaulting dealer; subsequently the surety brought this action against the defaulting dealer and the dealer who had suffered the loss. We agree with the district court and affirm.

## I. *Background Facts.*

The parties have stipulated to the following facts. Larry T. McDowell, a/k/a Larry Holloday, owned and operated Big River Harley Davidson (Big River) in Wapello, Iowa. As required by statute, McDowell took out a $35,000 retail motor vehicle dealer's surety bond with United Fire & Casualty Co. (United). *See* Iowa Code § 332.4(7) (requires bond as prerequisite to obtaining retail motor vehicle dealer's license). The bond was in force between April 14, 1987, and December 26, 1992. Big River ceased business operations in November 1992; McDowell left the state shortly thereafter.

Greg Elworth owns and operates Elworth Harley Davidson Sales and Service, Inc. (Elworth), a motorcycle dealership in Norfolk, Nebraska. During the bond coverage period, Elworth purchased at wholesale two motorcycles from Big River. Elworth intended to add the motorcycles to its dealership inventory and resell them. Big River delivered only one of the motorcycles. The value of the motorcycle Big River failed to deliver is $11,887.

During this time frame, Big River also engaged in at least three retail motorcycle sales that resulted in additional claims against the bond totaling $11,547.

## II. *Background Proceedings.*

United filed a two-count petition in equity. Count I asked the court to determine the validity of all known potential claims upon the bond. Count II prayed for a judgment against McDowell and his wife, jointly and severally, on a 1990 agreement indemnifying United for any claims made against the bond.

Elworth answered. United filed a motion for summary judgment. Elworth resisted. United filed a statement of undisputed facts; Elworth filed a response.

Following a hearing, the court granted summary judgment to United. Elworth appeals from this ruling.

## III. *Scope of Review.*

Our review of a summary judgment ruling is at law. Iowa R.App.P. 4. Here the facts are stipulated, so there is no genuine issue of any material fact. The issue is one of statutory construction, a legal question. Summary judgment is the proper remedy when only legal questions are involved. Iowa R.Civ.P. 237; *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 528 (Iowa 1995); *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.,* 495 N.W.2d 723, 726 (Iowa 1993).

## IV. *Scope of Coverage Under the Surety Bond Provisions.*

Elworth first argues that the provisions of the bond provide broader coverage than our retail motor vehicle surety bond statute requires. We quickly dismiss this argument, as it is without merit. "Where the bond is a statutory bond, the surety's liability must be measured by the statute rather than by the form of the bond." *State Sur. Co. v. Lensing,* 249 N.W.2d 608, 611 (Iowa 1977). We compare the provisions of the bond statute with the provisions of the bond itself. The statutory provisions are read into the bond. *See, e.g.,* 12 Am.Jur.2d *Bonds* § 27, at 497 (1964) ("[A] statute providing for the giving of a bond becomes part of the bond,

and imports into it any omitted conditions required by the statute."). They prevail over additional or contrary bond provisions, which are treated as surplusage without effect. *Community Sav. Bank v. Western Sur. Co.,* 232 Iowa 1381, 1385, 8 N.W.2d 427, 429 (1943). We will not enlarge the scope of a statutory bond beyond the express terms of the statute. *Zapf v. Ridenour,* 198 Iowa 1006, 1009, 200 N.W. 618, 619 (1924).

## V. *Scope of Surety Bond Coverage Under Iowa Code Section 322.4(7).*

A. *Applicable law and issue.* The applicable version of Iowa Code section 322.4(7) sets out the terms and conditions for recovery under a retail motor vehicle dealer license bond. It provides in pertinent part:

> *Each person before engaging in this state in the business of selling at retail motor vehicles* or representing or advertising that the person is engaged or intends to engage in such business in this state *shall file* in the office of the department *an application for license as a motor vehicle dealer* in the state in such form as the department may prescribe, duly verified by oath, which application shall include the following:
>
> . . . .
>
> 7. Before the issuance of a motor vehicle dealer's license to a dealer engaged in the sale of vehicles for which a certificate of title is required under chapter 321, the applicant shall furnish a surety bond executed by the applicant as principal and executed by a corporate surety company, licensed and qualified to do business within this state, which bond shall run to the state of Iowa, be in the amount of thirty-five thousand dollars and be conditioned upon the faithful compliance by the applicant as a dealer with all of the statutes of this state regulating or applicable to the business of a dealer in motor vehicles, and *indemnifying any person who buys a motor vehicle from the dealer from any loss or damage occasioned by the failure of the dealer to comply with any of the provisions of chapter 321 and this chapter, including, but not limited to, the furnishing of a proper and valid certificate of title to* *the motor vehicle involved in the transaction.*

(Emphasis added.)

As mentioned, the issue is whether the "any person" language in this section indemnifies a dealer who purchases at wholesale from another dealer and suffers a loss.

■ B. *The merits.* We engage in statutory construction only when the meaning of statutory provisions is unclear. Iowa Code § 4.6; *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994). Here the prefatory language in section 322.4 requires "[e]ach person . . . selling at retail motor vehicles" to file an application for a license as a retail motor vehicle dealer. The language in section 322.4(7) requires that the statutory surety bond indemnifies "any person who buys a motor vehicle from the dealer."

■ Section 322.4(7) is open to two interpretations. On the one hand, the legislature could have intended the surety bond to indemnify anyone who buys a motor vehicle from a dealer. On the other hand, the legislature could have intended the surety bond to indemnify only consumers who buy a motor vehicle from a dealer. When a statute is open to more than one interpretation, we must engage in statutory construction to ascertain legislative intent.

■ Certain well-established rules aid us in determining legislative intent. We look to what the legislature said rather than to what it should or might have said. Iowa R.App.P. 14(f)(13). We consider not only the language of the statute, but also its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations. *Probasco v. Iowa Civil Rights Comm'n,* 420 N.W.2d 432, 434–35 (Iowa 1988); Iowa Code §§ 4.6(1), (5). We will not construe a statute in a way that would produce impractical or absurd results. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14 (Iowa 1993). Finally, when searching for legislative intent, we look at the whole statute and not the separate parts. *Id.*

■ In applying these rules, we conclude the legislature intended the bond provision in

section 322.4(7) to indemnify only consumers. We are persuaded this is the case because of (1) the language in section 322.4, (2) the legislative scheme in chapter 322, and (3) the policy reasons underlying chapter 322.

1. *The language in Iowa Code section 322.4.* Iowa Code section 322.4 pertinently requires that "[e]ach person before engaging ... in the business of selling at retail motor vehicles ... shall file ... an application for license as a motor vehicle dealer." Subsection 7 of this section provides that

> [b]efore the issuance of a ... license to a dealer ... the applicant shall furnish a surety bond ... indemnifying any person who buys a motor vehicle from the dealer from any loss or damage occasioned by the failure of the dealer to comply with any of the provisions of chapter 321 and this chapter.

Iowa Code section 322.2(4) defines "at retail": " 'At retail' means to dispose of a motor vehicle to a person who will devote it to a consumer use."

A wholesale dealer is not included in the normally understood meaning of the word consumer. *See, e.g.,* Blacks Law Dictionary 316 (6th ed. 1990) (alternatively defining consumer as a (1) "user of the final product," and (2) "buyer (other than for purposes of resale) of any consumer product"). The dictionary goes on to say that "[c]onsumers are to be distinguished from manufacturers (who produce goods), and wholesalers or retailers (who sell goods)." *Id. See also Auto Value Lease Plan, Inc. v. American Auto Lease Brokerage, Ltd.,* 57 Wash.App. 420, 421, 788 P.2d 601, 602 (1990) (citation omitted) ("[T]he 'retail purchaser' is the buyer who is the final user of the goods, as distinguished from a middleman or a purchaser who plays a wholesaler role.").

Giving operative effect to all parts of section 322.4, we think the legislature intended the bonding requirement to apply only to consumers. Had the legislature intended the bonding requirement to cover all purchasers it would not have used the words "at retail" as it did in section 322.4. The meaning of the language "any person" in section 322.4(7),

while admittedly broad, must still be considered in context.

Prior case law supports our conclusion that the broad language "any person" in section 322.4(7) "is not conclusive" and that the meaning of this language is "affected by its context." *Boone State Bank & Trust Co. v. Westfield Ins. Co.,* 298 N.W.2d 315, 317–18 (Iowa 1980) (concluding that the language "any person" in section 322.4(7) did not include lender of motor vehicle dealer because statute was intended to benefit persons purchasing motor vehicles from the dealer).

2. *The legislative scheme in Iowa Code chapter 322.* Iowa Code chapter 322 covers licensing of both dealers selling at retail and dealers selling at wholesale. There are also provisions pertaining to dealers generally, provisions that cover a number of matters common to both. *See generally* Iowa Code ch. 322. As mentioned, the licensing provision for dealers selling at retail requires a bond. *See* Iowa Code § 322.4(7).

In contrast, the licensing provisions for dealers selling at wholesale do not have such a requirement. *See, e.g.,* Iowa Code §§ 322.29 (providing for licensing of wholesalers with no requirement for bond); 322.27 (providing for the licensing of manufacturers with no bond requirement; permitting dealers in both used and new motor vehicles to wholesale such vehicles without additional license or bond). *See also* Iowa Code § 322.28 (prohibiting wholesalers from selling at retail unless licensed as new motor vehicle dealer).

We think this legislative scheme further supports our conclusion that the bond requirement in section 322.4(7) was intended to apply only to consumers.

3. *The policy reasons underlying Iowa Code chapter 322.* We have described Iowa Code chapter 322 as "a regulatory law and not merely a licensing act for raising revenue. Its overriding purpose is to protect consumers of motor vehicles from fraud and deception." *State v. Miner,* 331 N.W.2d 683, 687 (Iowa 1983) (citation omitted). We pointed out in *Boone State Bank & Trust Co.* that "the relatively small bond would not provide much protection if it were intended to cover inventory financiers as well as vehicle pur-

chasers." *Boone State Bank & Trust Co.,* 298 N.W.2d at 317. Likewise, the $35,000 bond requirement would not provide much protection to consumers vying with wholesalers in multi-claim circumstances. *Cf. United Fire & Cas. Co. v. First Fed. Sav. Bank,* 460 N.W.2d 94, 96–97 (Minn.App.1990) (applying same reasoning to similar statute providing that bond was for benefit of "any transferor, seller, or purchaser of a motor vehicle"; held that this language did not include bank holding titles as security for money lent to dealer).

The policy reasons underlying Iowa Code chapter 322 contemplate protecting consumers. They simply do not contemplate protecting sophisticated dealers from each other.

For all of these reasons, we hold that the language "any person" in section 322.4(7) does not include a motor vehicle dealer who purchases at wholesale from a dealer selling at retail.

VI. *Conclusion.*

Here Elworth purchased two motorcycles from Big River. Elworth intended to add the motorcycles to its dealership inventory and resell them. Elworth did not therefore purchase the motorcycles as a consumer; it purchased the motorcycles as a wholesaler. The district court correctly concluded that Elworth is not the type of purchaser the legislature intended to protect by the bond issued pursuant to Iowa Code section 322.4(7). We therefore affirm.

**AFFIRMED.**