**STATE of Iowa, Appellant,**

v.

**Michael Allen LINDEMAN, Appellee.**

No. 95–1905.

Supreme Court of Iowa.

Nov. 20, 1996.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kasey Wadding, Assistant County Attorney, for appellant.

Mark E. Mershon of Mershon Law Firm, Cedar Falls, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Michael Lindeman, was charged with operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2 (1995). The district court suppressed the results of a breath test, ruling the State did not comply with Iowa's implied consent law because Lindeman was not arrested by

an officer qualifying as a "peace officer" under chapter 321J. *See* Iowa Code §§ 321J.1(7), .6(1)(a). On discretionary review from this ruling, we reverse. We hold there was substantial compliance with chapter 321J because the officer invoking implied consent, who did qualify as a "peace officer" under chapter 321J, made an independent assessment of the defendant's intoxication before administering the breath test.[1]

## I. *Background Facts and Proceedings.*

Officer Daryl Douglass was a patrolman for the town of La Porte City. On May 26, 1995, at about 11:30 p.m., he observed Lindeman's pickup pass through an intersection without stopping at a stop sign. The pickup then went over the curb and stopped. Officer Douglass activated his lights and pulled in behind the vehicle.

Lindeman, who was driving, and his passenger got out of the pickup. Officer Douglass saw Lindeman swaying slightly; he also smelled the odor of alcohol on Lindeman. Lindeman explained that his brakes had gone out. As officer Douglass approached the pickup, he observed brake fluid near the right front fender and two open cans of beer inside the cab. When he picked up the cans, he noted they were cold and half-consumed.

Officer Douglass asked Lindeman if he had been drinking; Lindeman said he had. Officer Douglass then had Lindeman perform four field sobriety tests. While Lindeman performed these tests, officer Douglass called for the assistance of an officer who was certified to invoke implied consent. Officer Douglass had not "completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages," and therefore did not qualify as a "peace officer" for purposes of the implied consent law. *See* Iowa Code § 321J.1(7)(e) (defining "peace officer").

Officer Douglass concluded Lindeman had failed the field sobriety tests, so he obtained Lindeman's consent for a preliminary breath test (PBT). The PBT indicated a blood alcohol content of greater than .10. Based on these results, officer Douglass arrested Lindeman for operating while intoxicated.

In response to officer Douglass's earlier call, the dispatcher had called officer Kirk Dolleslager who had recently returned to his home after his shift had ended at 11:00 p.m. On his way back to the police station, officer Dolleslager saw officer Douglass's vehicle and stopped at the scene. By then, Lindeman had been placed in the rear seat of the patrol car. Officer Douglass informed officer Dolleslager that Lindeman had failed the field sobriety tests and asked officer Dolleslager to invoke implied consent for a breath test at the police station. Officer Dolleslager did not see or speak to Lindeman at the scene, but he did observe Lindeman's vehicle parked on top of the curb as well as open beer cans and a cooler containing beer in the pickup.

Officer Dolleslager then proceeded to the police station to prepare for the implied consent procedure. Once officer Douglass and Lindeman arrived, officer Dolleslager spoke with Lindeman for two or three minutes before informing him of the implied consent law. During this conversation, officer Dolleslager noted that Lindeman's eyes were bloodshot and watery, Lindeman's speech was slightly slurred, and Lindeman smelled like alcohol. At the suppression hearing, officer Dolleslager testified his personal observations supported his belief that Lindeman was intoxicated.

Officer Dolleslager informed Lindeman of the implied consent law and Lindeman consented to a breath test. Officer Dolleslager administered the test which showed a blood alcohol level of .138. Lindeman was charged with operating while intoxicated (OWI) in violation of section 321J.2.

Lindeman moved to suppress the breath test results and any statements he made while in the presence of the police. He argued officer Douglass lacked probable cause to arrest him and the police had failed to comply with the implied consent law. In its ruling on this motion, the district court

---

1. This conclusion is in accord with our recent opinion in *State v. Palmer,* 554 N.W.2d 859 (Iowa 1996). We note the trial court did not have the benefit of this decision when it ruled on Lindeman's motion to suppress.

held there was probable cause to support Lindeman's arrest. Therefore, the court denied the request to suppress any statements made by Lindeman to the police. The court did, however, rule the results of the breath test administered by officer Dolleslager were inadmissible. The district court based its decision on officer Douglass's failure to qualify as a "peace officer" as defined in section 321J.1(7)(e). *See* Iowa Code § 321J.6(1)(a) (requiring that a "peace officer" lawfully place the person under arrest).

We granted the State's request for discretionary review. The State makes three arguments in support of reversal: (1) officer Douglass was a de facto "peace officer" under chapter 321J; (2) officer Dolleslager substantially complied with Iowa Code section 321J.6 in invoking implied consent; and (3) any noncompliance with chapter 321J should not be the basis for suppression of the breath test results. Because the district court's ruling turns on its interpretation of chapter 321J, we review for correction of errors of law. *State v. Palmer,* 554 N.W.2d 859, 864 (Iowa 1996).

## II. *Iowa's Implied Consent Law.*

Chapter 321J allows chemical testing of bodily substances from persons suspected of driving while intoxicated. *See* Iowa Code § 321J.6. The legislature has, however, limited the circumstances under which such a test may be demanded. The withdrawal of bodily substances and the chemical test must be "administered at the written request of a peace officer having reasonable grounds to believe that the [defendant] was operating a *motor vehicle in violation of section 321J.2.*" *Id.* § 321J.6(1). In addition, one of six specified conditions must exist. The condition at issue here is found in section 321J.6(1)(a): "A *peace officer* has lawfully placed the person under arrest for violation of section 321J.2." *Id.* § 321J.6(1)(a) (emphasis added).

As we recently discussed in *State v. Palmer,* the term "peace officer" has a special meaning under chapter 321J. *Palmer,* 554 N.W.2d at 862. The pertinent portion of the statutory definition of "peace officer" is contained in section 321J.1(7)(e), which includes:

> e. Any other law enforcement officer who has satisfactorily completed an ap-

proved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety.

Iowa Code § 321J.1(7)(e). The legislature's decision to require officers to have special training in order to invoke implied consent reflects its desire to protect citizens from indiscriminate testing or harassment. *Palmer,* 554 N.W.2d at 866–67. We turn now to the specific issues raised by the State.

## III. *Was Officer Douglass a De Facto "Peace Officer" Under Section 321J.1(7)(e)?*

■ The State concedes officer Douglass did not have the training required by section 321J.1(7)(e). It claims, however, that officer Douglass is a de facto "peace officer" because (1) he had the authority to arrest Lindeman for operating while intoxicated, and (2) he had all the indicia of the authority of a peace officer, such as a police car, a badge, a police uniform and a gun belt.

We recently considered an identical issue in the *Palmer* case which, coincidentally, involved the same police officer. In that case, we held officer Douglass was not a de facto peace officer under chapter 321J because his inability to qualify under chapter 321J's definition of "peace officer" rested on more than a mere technicality. *Id.* at 866. Officer Douglass was not a peace officer under section 321J.1(7)(e) because he lacked training in OWI procedures. *Id.* at 867. We observed that the training requirement is the essence of this statute and "protects the citizens of Iowa from 'indiscriminate testing and harassment.'" *Id.* at 865 (quoting *State v. Hopkins,* 465 N.W.2d 894, 896 (1991)). Therefore, we refused to "undermine the legislature's policy decision" by recognizing one without such training as a de facto peace officer. *Id.* We see no reason to deviate from *Palmer* here.

## IV. *Did the State Substantially Comply With the Requirements of Chapter 321J?*

■ As noted above, section 321J.6(1)(a) requires, as a prerequisite to the State's

ability to invoke implied consent, that a "peace officer" lawfully place the defendant under arrest for operating while intoxicated. The State contends it substantially complied with this requirement under the facts of this case.

We have held that substantial compliance with section 321J.6 is sufficient if the purposes underlying the requirements of that section "were not compromised." *State v. Satern*, 516 N.W.2d 839, 841 (Iowa 1994). A case illustrating the application of this rule is *State v. Schlemme*, 301 N.W.2d 721 (Iowa 1981).

The *Schlemme* case involved a slightly different version of the implied consent law which required that any testing be done at the written request of the officer who had placed the defendant under arrest. *See* Iowa Code § 321B.3 (1979). In *Schlemme*, the arresting officer turned the defendant over to a second officer who invoked implied consent. *Schlemme*, 301 N.W.2d at 722. The second officer did not rearrest the defendant. *Id.* Therefore, there was not literal compliance with the statute. *Id.* In order to comply with the express terms of the statute, it would have been necessary for the second officer to rearrest the defendant. We concluded such a requirement would not further the purposes of the statute. *Id.* at 724. Relying in part on the fact that both officers qualified as peace officers and were competent to administer the implied consent procedure, we held there was substantial compliance with the statute. *Id.*

*Palmer* provides an instructive contrast. In *Palmer*, we refused to find substantial compliance with section 321J.6 because the arresting officer did not have OWI training. *Palmer*, 554 N.W.2d at 867. We noted there had been no "objective and reliable assessment of intoxication made by one deemed

competent under section 321J.1(7)." *Id.* This problem was not present in *Schlemme* because the arresting officer there had made such an assessment and was deemed competent to do so under chapter 321B (now chapter 321J). *Schlemme*, 301 N.W.2d at 724.

What was lacking in *Palmer* is present here. Officer Dolleslager testified that he personally observed the telltale signs of intoxication during his conversation with Lindeman that preceded officer Dolleslager's initiation of the implied consent procedures. Thus, there was "an objective and reliable assessment of intoxication made by one deemed competent under section 321J.1(7)." *Palmer*, 554 N.W.2d at 867.[2]

The only element the situation before us lacks to fully comply with section 321J.6(1)(a) is an actual arrest by officer Dolleslager. Had officer Dolleslager rearrested Lindeman, there would have been compliance with the letter, as well as the spirit, of section 321J.6(1)(a): a "peace officer" would have "lawfully placed [Lindeman] under arrest." Consequently, the issue before us in this case is whether the failure of the second officer to rearrest the defendant compromises the purposes underlying section 321J.6(1)(a). Again, we look to *Schlemme* where we held that a rearrest by the second officer would not further the purposes of the implied consent law. *Schlemme*, 301 N.W.2d at 724; *accord Palmer*, 554 N.W.2d at 867 (observing that the mere statement by the second officer of the words, "I hereby rearrest you," is a meaningless gesture in the absence of the second officer's independent assessment of the defendant's intoxication).

The same conclusion is warranted here where the purpose of section 321J.6(1)(a) was satisfied by officer Dolleslager's independent assessment of Lindeman's intoxication. Un-

2. Our analysis is focused on the intoxication element of OWI. As charged in this case, however, the offense of operating while intoxicated includes two elements: (1) the person operates a motor vehicle in this state; (2) while under the influence of an alcoholic beverage or while having an alcohol concentration as defined in section 321J.1 of .10 or more. Iowa Code § 321J.2(1). Thus, to make a lawful arrest for operating while intoxicated as required by sec-

tion 321J.6(1)(a), a "peace officer" must have probable cause to believe both elements are present. We have not discussed officer Dolleslager's independent knowledge that Lindeman was driving the pickup, because officer Douglass's knowledge of that fact as the arresting officer is imputed to officer Dolleslager as the officer invoking implied consent. *See Palmer*, 554 N.W.2d at 868 n. 4.

der these circumstances, a rearrest by officer Dolleslager would not have substantially advanced the goals of the implied consent law. Therefore, we hold there was substantial compliance with section 321J.6 despite officer Dolleslager's failure to rearrest Lindeman for OWI.

Having found substantial compliance with the implied consent law, we conclude the trial court erred in suppressing the results of Lindeman's breath test. Therefore, we need not consider the third issue raised by the State, whether noncompliance with chapter 321J is a basis for suppression of the breath test results.

**REVERSED AND REMANDED.**