STATE of Iowa, Appellant,

v.

Timothy Christopher ALBRECHT, Appellee.

No. 01–1803.

Supreme Court of Iowa.

Feb. 26, 2003.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, J. Patrick White, County Attorney, and M. Victoria Dominguez and Karen D. Egerton, Assistant County Attorneys, for appellant.

Linda Del Gallo, State Appellate Defender, Martha J. Lucey, Assistant Appellate Defender, and Ronald Bailey, Drake Student Legal Intern, for appellee.

LAVORATO, Chief Justice.

The State seeks discretionary review of a district court ruling granting Timothy Christopher Albrecht's motion to suppress

the results of an intoxilyzer test. We reverse and remand for further proceedings.

In the early morning hours of January 14, 2001, Iowa City Police Officer Gabriel Cook stopped a vehicle driven by Albrecht because it had an expired registration. While speaking to Albrecht, the officer detected a strong odor of alcohol and noticed that Albrecht's eyes were bloodshot and watery.

The officer administered a horizontal gaze nystagmus test, which resulted in a failing score of six, indicating a seventy-seven percent probability that Albrecht's blood alcohol concentration (BAC) was above the legal limit of .10. Albrecht admitted to the officer that he had been drinking. Following Albrecht's admission, the officer administered a preliminary breath test (PBT) using an Alco–Sensor III, which gave a reading of .109.

Officer Cook testified that before administering the PBT, he asked Albrecht when he had his last drink but could not recall Albrecht's response. However, the officer also testified that if Albrecht had responded that he had been drinking within the last fifteen minutes, he—Officer Cook—would have observed Albrecht for fifteen minutes before administering the PBT.

Because of the weather, Albrecht was taken to the Iowa City Police Department where the officer administered additional sobriety tests. Following these tests, the officer invoked the implied-consent procedure of Iowa Code section 321J.6 (1999). The officer indicated on the implied consent form that he was basing his request on Albrecht's PBT. Albrecht submitted to an intoxilyzer test, which resulted in a BAC reading of .121. The officer then arrested Albrecht for operating while intoxicated.

Later, the State charged Albrecht with operating while intoxicated in violation of Iowa Code section 321J.2. Albrecht moved to suppress the results of the intoxilyzer test. In his motion, Albrecht conceded there were reasonable grounds to believe he had been operating while intoxicated for purposes of Iowa Code section 321J.6. However, he contended the officer failed to administer the PBT in compliance with Iowa Code section 321J.5 and Iowa Administrative Code rule 661—7.5. Because there was no valid PBT, Albrecht contended, the requirement of Iowa Code section 321J.6(1)(d) was not met, and the officer therefore lacked grounds to invoke implied consent.

The district court agreed with Albrecht and granted his motion to suppress. We granted the State's application for discretionary review.

**I.** Iowa Code section 321J.2 makes it an offense to operate a motor vehicle while under the influence of an alcoholic beverage or while having an alcohol concentration of .10 or more. Iowa Code § 321J.2(1).

Iowa Code section 321J.6, Iowa's implied consent law, provides authority for chemical testing of bodily substances from persons suspected of driving while intoxicated. That statute provides in relevant part:

1. A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer

having *reasonable grounds* to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A, and *if*

. . . .

d. The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of [.10].

Iowa Code § 321J.6(1)(*d*) (emphasis added). The other conditions listed in section 321J.6(1) are not at issue in this case.

As this statutory provision makes clear, [t]he legislature has ... limited the circumstances under which [the implied-consent procedure may be invoked]. The withdrawal of bodily substances and the chemical test must be "administered at the written request of a peace officer having reasonable grounds to believe that the [defendant] was operating a motor vehicle in violation of section 321J.2." In addition, one of six specified conditions must exist.

*State v. Lindeman,* 555 N.W.2d 693, 695 (Iowa 1996) (citations omitted).

 As mentioned, Albrecht concedes reasonable grounds existed in this case. Therefore, the condition at issue here is whether the officer administered a valid PBT. Substantial compliance with section 321J.6 is sufficient to invoke the implied-consent procedure provided the underlying requirements of the section were not compromised. *Id.* at 696. Those requirements include protecting the health of the person being tested, guaranteeing accuracy of the test result for use in judicial proceedings, and protecting citizens from indiscriminate testing or harassment. *State v. Hopkins,* 465 N.W.2d 894, 896 (Iowa 1991). The remedy for not substantially complying with the implied-consent procedure is the exclusion of the test results because this is the only way a defendant's right to refuse a test can be pre-

served. *State v. Kjos,* 524 N.W.2d 195, 197 (Iowa 1994).

**II.** Whether the officer administered a valid PBT turns on the requirements of Iowa Code section 321J.5 and Iowa Administrative Code rule 661—7.5.

Section 321J.5 addresses the PBT:

1. When a peace officer has reasonable grounds to believe that either of the following have occurred, the peace officer may request that the operator provide a sample of the operator's breath for a preliminary screening test *using a device approved by the commissioner of public safety for that purpose:*

a. A motor vehicle operator may be violating or has violated section 321J.2 or 321J.2A.

b. The operator has been involved in a motor vehicle collision resulting in injury or death.

Iowa Code § 321J.5(1) (emphasis added).

Iowa Administrative Code rule 661—7.5 implements the requirements of section 321J.5:

(1) A peace officer desiring to perform preliminary screening tests of a person's breath shall use an Iowa department of public safety division of criminal investigation criminalistics laboratory-approved device.

. . . .

(2) Any peace officer using an approved device *shall follow the instructions furnished by the manufacturer for use of such a device ....*

Iowa Admin. Code r. 661—7.5 (1999) (emphasis added).

The instructions for the Alco–Sensor III, the device used to administer the PBT in this case, direct the person administering the PBT to "[i]nstruct subject to give sample. Be sure to observe 15 minute waiting period before beginning of test."

A footnote to this particular instruction provides:

> If the Alco–Sensor III is being used as a SCREENER, the subject can be asked if he/she has used any alcohol in the last 15 minutes. If the response is negative, test the subject immediately; if otherwise, wait 15 minutes before testing. *If the test result is positive, wait 2 to 5 minutes and take a second test.* A similar result indicates true blood alcohol level. A much lower result strongly suggests mouth alcohol was present at the time of the first test.
>
> If the Alco–Sensor III is being used EVIDENTIALLY, the subject must be kept under observation for 15 minutes as previously described.

(Emphasis added.)

Thus, according to section 321J.5(1) and rule 661—7.5(1), officers must use a device approved by the commissioner of public safety when administering a PBT. According to rule 661—7.5(2) officers must follow the manufacturer's instructions when administering the test. The manufacturer's instructions for the Alco–Sensor III instruct the person administering the test to take a second test if the first test is positive. Therefore, Albrecht argues, a valid PBT can only be obtained by administering *two* PBTs if the first test is positive.

The district court agreed with Albrecht, concluding:

> Since the PBT was not administered in accordance with the manufacturer's specifications the conditions of subsection [(d) of section 321J.6] were not met. The second requirement of section 321J.6 was not met by any of the other statutory criteria. Thus, the officer did not meet the conditions precedent to a valid request for a breath sample under the implied consent rules.
>
> This court is well aware that the practice of law enforcement officers in this jurisdiction is to administer only one PBT under almost all circumstances. This ruling is not intended to find that the results of a single PBT are not usually accurate. Even the manufacturer's representative has previously testified to the accuracy of a single test. In most cases, the PBT result merely confirms what the officer has already determined and the officer then places the person under arrest. The arrest meets one of the second criteria (Section 3121J.6(1)(a) ["A peace officer has lawfully placed the person under arrest for violation of section 321J.2."]) and the lack of a second PBT does not invalidate the implied consent test. However, the statute and administrative rules require compliance with the manufacturer's operating instructions and those instructions require two tests. If that is the sole basis upon which implied consent is invoked, then strict compliance with the statute and rules must be required.
>
> In that the admissibility of an implied consent test result of above .10 BAC constitutes proof of a per se violation of section 321J.2, this court finds that the statutory requirements must be strictly adhered to. A failure to do so must result in suppression of the test result.

■ **III.** The State strenuously challenges the district court's analysis and conclusion. Essentially, the State argues the district court ignored well-established rules of statutory construction when the court in effect concluded that language found in the manufacturer's instruction manual for the PBT device overrides the plain meaning of the applicable statutes and the legislative intent underlying those statutes. For reasons that follow, we agree.

Here, the admissibility of the intoxilyzer test results depends on our interpretation

of statutory provisions and an accompanying administrative rule. Our review is therefore for correction of errors at law. *See State v. Palmer,* 554 N.W.2d 859, 864 (Iowa 1996).

■ Our ultimate goal in interpreting statutes is to discover the true intention of the legislature. *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998). In searching for legislative intent, we consider not only the language of the statute, but also its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations. *United Fire & Cas. Co. v. Acker,* 541 N.W.2d 517, 519 (Iowa 1995). Additionally, we construe a statute in a way that would avoid impractical or absurd results. *Id.* And we look at the whole statute, not just the separate parts. *Id.*

■ When interpreting statutes, we attempt to harmonize all relevant legislative enactments, including rules and regulations of administrative agencies, "so as to give meaning to all if possible." *Messina v. Iowa Dep't of Job Serv.,* 341 N.W.2d 52, 56 (Iowa 1983). The rules of statutory construction and interpretation also govern the construction and interpretation of administrative rules and regulations. *Id.*

■ We do not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear. *State v. Snyder,* 634 N.W.2d 613, 615 (Iowa 2001). We resort to rules of statutory construction only when the explicit terms of a statute are ambiguous. *City of Waukee v. City Dev. Bd.,* 590 N.W.2d 712, 717 (Iowa 1999). "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Carolan v. Hill,* 553 N.W.2d 882, 887 (Iowa 1996).

■ The plain meaning of the statutory provisions in Iowa Code chapter 321J defies the district court's interpretation. Our review of those provisions reveals no requirement that a peace officer administer two PBTs before invoking the implied-consent procedure in section 321J.6.

Section 321J.5(1) permits an officer to request "*a* [breath] sample" for "*a* preliminary screening test." Iowa Code § 321J.5(1) (emphasis added); *see also* Iowa Code § 321J.5(2) ("this preliminary screening test"). The only requirement in section 321J.5(1) is that the PBT device be "approved by the commissioner of public safety for that purpose." Section 321J.6(1)(*d*) refers to "*the* preliminary breath screening test." Iowa Code § 321J.6(1)(*d*) (emphasis added). The language in these statutory provisions clearly contemplates that a peace officer need only administer *one* PBT.

Even if were we to go outside the plain meaning of these statutory provisions, the legislative intent and purpose behind the use of the PBT supports the State's position. For example, in Iowa, the PBT is used *only* for screening purposes and is not used to obtain a precise measurement of a driver's BAC. Indeed, Iowa Code section 321J.5 limits the evidentiary use of PBT results:

> The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made or whether to request a chemical test authorized in this chapter, but shall not be used in any court action except to prove that a chemical test was properly requested of a person pursuant to this chapter.

Iowa Code § 321J.5(2).

Because of the PBT's unreliability, "the legislature chose to make the 'results' inadmissible in evidence." *State v. Deshaw,* 404 N.W.2d 156, 158 (Iowa 1987). However, the PBT "provide[s] peace officers with the tool of a quick, convenient test to assist

officers in determining whether an arrest should be made." *Id.* The PBT no longer fulfills the legislative intent that it serve as a "quick, convenient test" when officers must administer a second PBT.

Like the State, we do not view the manufacturer's instructions as requiring two PBTs when the PBT is used as a screening device. As mentioned, a footnote to the manufacturer's instructions states: "If the ALCO–SENSOR III is being used as a SCREENER, the subject *can* be asked if he/she has used any alcohol in the last 15 minutes." (Emphasis added.) We agree with the State that the use of the word "can" indicates administering two tests is an optional step when the PBT is used for screening purposes.

A representative of the manufacturer of the Alco–Sensor III device gave testimony supporting this interpretation during a suppression hearing in a similar case. The district court admitted the transcript of the representative's testimony into evidence at Albrecht's suppression hearing because Albrecht's counsel was counsel for the defendant in the other case. Therefore, Albrecht's counsel had been permitted to cross-examine the representative on the same issue.

The representative testified that while the fifteen minute period is important in those states where the device is used as an evidentiary device, it is not necessary when the device is used for screening purposes. He also testified that a second test is unnecessary when the device is used as a screener. In addition, he pointed out that the Alco–Sensor III device is used as an evidential instrument in some states and that the device's manual could not cover all uses of the instrument.

Moreover, the second test is referred to in the manufacturer's instructions only in connection with the screening process. Significantly, there is no mention of a second test when the Alco–Sensor III device is used for evidentiary purposes. At first blush, this does seem somewhat nonsensical. One would think that more assurance of reliability would be required when the device is used for evidentiary purposes.

One way to explain this seemingly illogical difference is to focus on the fifteen-minute waiting period. When the device is used for screening purposes, the officer can simply ask the suspect whether he or she has had alcohol within the last fifteen minutes and then test if the response is negative. In that way, the officer can minimize the length of the investigatory detention.

But when the device is used for evidentiary purposes, the officer must keep the suspect under observation for at least fifteen minutes in *all* cases regardless of the suspect's response about recent consumption of alcohol. Apparently then, the fifteen-minute period is key on the question of reliability and takes care of any concern about the presence of mouth alcohol, a concern the manufacturer's instructions are trying to address. The fact that a second test is not required when the device is used for evidentiary purposes suggests that the fifteen-minute period is sufficient to allay any concern about the presence of mouth alcohol without the need for a second test. We therefore conclude the manufacturer's instructions do not require a second test and for this reason the instructions are not inconsistent with our statutes or administrative rules.

Here Officer Cook did ask Albrecht whether he had consumed alcohol within the last fifteen minutes. It is true the officer could not remember what Albrecht had responded. But the officer testified he would not have given the PBT at that point if Albrecht had said he had consumed alcohol within the last fifteen minutes because that was his standard procedure. Therefore, a reasonable inference is

that Albrecht had not consumed alcohol within the last fifteen minutes before the PBT was administered. There is nothing in the record to indicate that the PBT result was unreliable.

For all these reasons, we conclude a second test was not required under our statutes and administrative rules. Officer Cook had reasonable grounds to believe Albrecht was operating while intoxicated. The PBT that the officer administered to Albrecht indicated an alcohol concentration exceeding .10. Therefore, Officer Cook properly invoked implied consent and for that reason the intoxilyzer test result was admissible. The district court erred in concluding otherwise. We therefore reverse and remand for further proceedings.

**REVERSED AND REMANDED.**