# IN THE SUPREME COURT OF IOWA

No. 09–0651

Filed February 11, 2011

**ROLFE STATE BANK,**

Appellant,

vs.

**CHARLES A. GUNDERSON** and **GLORIA K. GUNDERSON, MARGARET GUNDERSON MOORE, CLARA GUNDERSON HOOVER** and **HAROLD M. HOOVER, HELEN D. GUNDERSON, DEANE C. GUNDERSON** and **MARTHA G. CARLSON,**

Appellees.

Appeal from the Iowa District Court for Pocahontas County, Kurt L. Wilke, Judge.

Bank appeals district court's refusal to apply valuation discounts under Iowa Code section 524.1406 in the event of a reverse stock split. **AFFIRMED.**

Mark McCormick, Robert A. Mullen, Michael R. Reck, and Kelsey J. Knowles of Belin McCormick, P.C., Des Moines, for appellant.

Charles A. Gunderson, Rolfe, pro se and for remaining appellees.

**APPEL, Justice.**

In this case, the court is confronted with an issue of first impression regarding minority appraisal rights of the shareholders of a state bank in a reverse stock split. Specifically, we address whether Iowa Code section 524.1406(3)(*a*) (2009)[1] applies to state banks in a reverse stock split. The district court concluded that Rolfe State Bank [hereinafter the Bank] erroneously interpreted Iowa law to require the consideration of valuation factors recognized for federal tax purposes, including minority status and lack of marketability discounts, in appraising the value of minority shares in a reverse stock split. On appeal, the Bank argues that the district court ignored both the plain meaning of the statute and its legislative history. For the reasons expressed below, we affirm the decision of the district court and hold that section 524.1406(3)(*a*) does not apply to state banks in a reverse stock split.

## I. Factual and Procedural History.

The Bank is an Iowa chartered state bank with its principal office in Rolfe, Iowa. Prior to the reverse stock split that gave rise to the litigation in this case, the vast majority of shares were held by Dixon Bankshares, Inc. The Gundersons were among thirty other shareholders who held a minority interest in the Bank.

Prior to a meeting of the board of directors to consider approval of a reverse stock split, the Bank's management hired BCC Advisors to provide an independent appraisal of the value of the Bank's common stock held by minority shareholders. The independent appraisal by BCC Advisors concluded that the fair market value of the shares as of

---

[1]Unless otherwise specified, all citations to the Iowa Code reference the 2009 Iowa Code.

June 30, 2008, was $1857 per share. In reaching this figure, BCC Advisors applied certain discounts to the value of the stock, including a minority discount and a discount for lack of marketability. These discounts amounted to a thirty-three percent reduction in the value of the common stock compared to the value of shares owned by Dixon Bankshares, the controlling shareholder.

Based upon the independent appraisal, the board of directors approved a reverse stock split, subject to shareholder approval. The board determined that, if the reverse stock split were approved, each minority shareholder whose ownership interests would be liquidated would be paid $2000 per share of common stock. The board based the $2000 figure on the appraisal made by BCC advisors.[2] The shareholders, and subsequently the regulatory authorities, approved the reverse stock split.

As a result of the reverse stock split, the Gundersons were forced to surrender their minority shares to the Bank, and they filed a notice of their exercise of appraisal rights pursuant to Iowa Code section 490.1323. The Gundersons asserted that the fair value of their surrendered common stock was $2700 per share. In response, the Bank paid the Gundersons $2000 per share, plus interest. The Gundersons responded by demanding payment in the amount of $2700, plus interest, less any prior payments by the Bank.

Pursuant to Iowa Code section 490.1330, the Bank filed a petition with the district court to determine the fair value of the shares of common stock formerly owned by the Gundersons. Relying, in part,

---

[2]The board increased the value per share from $1857 to $2000 by (1) adding $70 to account for the estimated amount of earnings per share that would occur in the period of time between the appraisal date and the closing of the reverse stock split, and (2) adding an additional $73 to round the value of each share up to $2000.

upon Iowa Code section 524.1406(3)(*a*), the Bank requested that the district court determine that: (1) the $2000 per share, plus interest, was the fair value of the shares the Gundersons had surrendered; (2) the Gundersons acted arbitrarily, vexatiously, and not in good faith with respect to their appraisal rights; and (3) the court assess all the costs of the proceeding, including the reasonable compensation and expenses of any appraisers appointed by the court, as well as plaintiff's attorneys' fees, against the Gundersons.

The Gundersons answered and filed motions for partial summary judgment and for summary judgment, which presented three independent bases. First, the Gundersons asserted that Iowa Code section 524.1406(3)(*a*) does not apply to the appraisal rights of minority shareholders of banks in a reverse stock split. Second, the Gundersons argued that, even if Iowa Code section 524.1406(3)(*a*) applied to reverse stock splits of banks, it did not apply to transactions where the shares of stock were acquired prior to July 1995. Third, the Gundersons argued that if Iowa Code section 524.1406(3)(*a*) did apply, the result would be an unconstitutional taking without compensation in violation of the state and federal constitutions.

The district court sustained the Gundersons' motion for partial summary judgment. The district court determined that, while the language in Iowa Code section 524.1406(3)(*a*) could be literally applied to all transactions involving appraisal rights, it also could reasonably be interpreted to apply only in the context of mergers, consolidations, and conversions because of the statutory context in which the provision was found. The Bank filed an application for interlocutory appeal, which we granted.

## II. Standard of Review.

This court reviews issues of statutory interpretation for correction of errors at law. *State v. Sluyter*, 763 N.W.2d 575, 579 (Iowa 2009). To the extent constitutional issues are raised, review is de novo. *State v. Groves*, 742 N.W.2d 90, 92 (Iowa 2007).

## III. Discussion.

**A. The Question of Ambiguity.** The question posed by this interlocutory appeal is whether Iowa Code section 524.1406(3)(*a*) authorizes a bank to consider valuation factors recognized for federal tax purposes, including minority and marketability discounts, in determining the fair value of extinguished shares in a reverse stock split. Before engaging in statutory construction, we examine whether the language of the statute is ambiguous. *State v. Tesch*, 704 N.W.2d 440, 451 (Iowa 2005). If the statute is unambiguous, we look no further than the statute's express language. *Id.*; *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). If, however, the statute is ambiguous, we inquire further to determine the legislature's intent in promulgating the statute. *Harker*, 633 N.W.2d at 325; *United Fire & Cas. Co. v. Acker*, 541 N.W.2d 517, 519 (Iowa 1995); *see* Iowa Code § 4.6.

A statute is ambiguous "if reasonable minds could differ or be uncertain as to the meaning of a statute." *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995). Ambiguity not only arises from the meaning of particular words, but also "from the general scope and meaning of a statute when all its provisions are examined." *Id.*; *accord State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). Words are often chameleons, drawing their color from the context in which they are found. *See Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996). The overall structure of a statute can have strong influence on the meaning of

particular words and phrases. *See AOL LLC v. Iowa Dep't of Revenue*, 771 N.W.2d 404, 409 (Iowa 2009). As a result, courts should be circumspect regarding narrow claims of plain meaning and must strive to make sense of our law as a whole. Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 399 (1950) (discussing the need to interpret words in context); 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction*, § 46.1, at 151–53 (Thompson/West 7th ed. 2007) (describing difficulties in applying the plain meaning rule); *see NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941) (Judge Learned Hand explaining, "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used . . . .").

We now turn to consideration of whether the language of the applicable Code provision, Iowa Code section 524.1406(3)(*a*), is ambiguous. This section provides:

> 3. *a.* Notwithstanding any contrary provision in chapter 490, division XIII, in determining the fair value of the shareholder's shares of a bank organized under this chapter or a bank holding company as defined in section 524.1801 *in a transaction or event in which the shareholder is entitled to appraisal rights,* due consideration shall be given to valuation factors recognized for federal tax purposes, including discounts for minority interests and discounts for lack of marketability.

Iowa Code § 524.1406(3)(*a*) (emphasis added).

The Bank contends that the plain language of Iowa Code section 524.1406(3)(*a*) is unambiguous. The Bank argues that the phrase "a transaction or event" is an open-ended provision that applies not only to

bank mergers, but to any kind of transaction that triggers appraisal rights under Iowa Code chapter 490, including reverse stock splits. Under the Bank's approach, the use of the broad phrase "a transaction or event" requires this court to approve of the application of minority and lack of marketability discounts in this reverse-stock-split case.

The Bank's approach, however, is not the only reasonable interpretation of section 524.1406(3)(*a*). Although "a transaction or event," viewed alone, appears to have broad application, the Gundersons argue that the phrase "transaction or event" is found in the context of a merger section of the Code and therefore applies only to transactions or events that are mergers. Further, the Gundersons suggest that the clause in which the phrase "transaction or event" appears does not modify the term "bank," but only the term "bank holding company."

We conclude that reasonable minds could differ regarding the meaning of the statute. While the language used by the legislature at first blush appears to be broad, we have in many cases stated that broad and even unqualified language must be evaluated in its context. *See Acker*, 541 N.W.2d at 520 (stating that the meaning of the unqualified and broad term "any person" must be considered in its overall context); *Boone State Bank & Trust Co. v. Westfield Ins. Co.*, 298 N.W.2d 315, 317 (Iowa 1980) (stating that broad language of a statute is "not conclusive" and is "affected by its context"). We agree with the Gundersons that it seems odd that an important change in appraisal law with respect to banks that covers a wide variety of transactions would be buried in a section of the Code dealing with bank mergers. It is at least plausible that the clause containing the phrase "transaction or event" is related only to bank holding companies and not to banks.

The meaning of section 524.1406(3)(*a*), therefore, is ambiguous. Because of the ambiguity, further inquiry into the legislature's intent in enacting and amending section 524.1406(3)(*a*) is necessary. *Harker*, 633 N.W.2d at 325; *Acker*, 541 N.W.2d at 519; *see* Iowa Code § 4.6.

**B. Legislative Intent and Section 524.1406(3)(*a*).** " 'The polestar of statutory interpretation is to give effect to the legislative intent of a statute.' " *Klinge v. Bentien*, 725 N.W.2d 13, 18 (Iowa 2006) (quoting *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999)). In determining legislative intent, we avoid placing undue importance on isolated portions of an enactment by construing all parts of the enactment together. *Gen. Elec. Co. v. Iowa State Bd. of Tax Review*, 702 N.W.2d 485, 489 (Iowa 2005). In the end, the object of our inquiry is to seek a result " 'that will advance, rather than defeat, the statute's purpose.' " *Klinge*, 725 N.W.2d at 18 (quoting *Schultz*, 604 N.W.2d at 62).

We begin our analysis of legislative intent by reviewing the legislative history related to reverse stock splits and to marketability and minority discounts. The trail begins with our decision in *Security State Bank v. Ziegeldorf*, 554 N.W.2d 884 (1996). In *Ziegeldorf*, we considered the meaning of the term "fair value" under Iowa Code section 490.1301(4), which applied in cases involving dissenters to reverse stock splits. 554 N.W.2d at 888. We held in *Ziegeldorf* that minority and marketability discounts could not be applied in determining "fair value" of dissenters' shares in reverse stock splits. *Id.* at 889–90.

In 1999, the legislature responded to our decision in *Ziegeldorf* as to bank mergers by amending the Iowa Banking Act through the enactment of House File 445. 1999 Iowa Acts ch. 162, § 1 (codified at Iowa Code § 524.1406 (Supp. 1999)). This legislation amended Iowa Code section 524.1406, a provision of the Iowa Banking Act dealing with

bank mergers, by adding a new subsection. *Id.* The new subsection provided that in determining the fair value of shareholder's shares "under this section," due consideration was required to be given to a number of valuation factors, "including discounts for minority interests and for lack of marketability." *Id.* Because section 524.1406 dealt solely with *bank mergers*, the use of the term "in this section" indicated a legislative intent to limit the application of marketability and minority discounts to bank mergers. *See id.* Consistent with this interpretation, the explanation to the bill stated that it related to "the determination of fair value of a dissenting shareholder's shares *in a state or national bank which is a party to a merger.*" H.F. 445, 78th G.A., Reg. Sess., explanation (Iowa 1999) (emphasis added). The 1999 statutory change did not apply to bank holding companies and did not apply to transactions that were not mergers.

In 2000, the legislature revisited the issue of marketability and minority discounts in the context of *bank holding companies* by enacting House File 2197. 2000 Iowa Acts ch. 1211, §§ 1–3 (codified at Iowa Code §§ 490.1301, 490.1330, 524.1406 (2001)). House File 2197 contained three interrelated sections that must be examined carefully to understand the legislative intent behind the enactment.

The first section of House File 2197 added a new provision to the dissenter's rights provisions of the Iowa Business Corporation Act by amending Iowa Code section 490.1330. *Id.* § 1. Section one included a new provision stating that fair value of shares of a *bank holding company* could be determined as provided in section 524.1406(3). *Id.* Thus, in section one, the legislature clearly intended to expand the applicability of marketability and minority discounts as allowed in Iowa Code section 524.1406(3) beyond banks to include *bank holding companies. See id.*

The second section of House File 2197 amended the definition of "fair value" in Iowa Code section 490.1301(4) of the Iowa Business Corporation Act by adding the following language:

> With respect to a dissenter's shares that are shares of a corporation that is a bank holding company as defined in section 524.1801, the factors indentified in section 524.1406, subsection 3, paragraph "a", shall also be considered.

*Id.* § 2.  This language in House File 2197, like section one, applied only to *bank holding companies.  Id.*  It expanded the use of marketability and minority discounts to include not only mergers, but other transactions in which shareholders of bank holding companies had the rights of dissenting shareholders under the Iowa Business Corporation Act, including reverse stock splits.  *See* Iowa Code § 490.1302(1)(*a*), (*d*).

The third section of House File 2197 amended Iowa Code section 524.1406.  2000 Iowa Acts ch. 1211, § 3.  Section three contains the language that is the focus of the dispute in this case.  This section enacted the following changes into law:

> 3. a. Notwithstanding any contrary provision in chapter 490, division XIII [the Iowa Business Corporation Act division dealing with rights of dissenting shareholders], in determining the fair value of shareholder's shares ~~under this section~~ of a bank organized under this chapter or a bank holding company as defined in section 524.1801 in a transaction or event in which the shareholder is entitled to the rights and remedies of a dissenting shareholder, due consideration shall be given to valuation ~~issues acknowledged and authorized by the Internal Revenue Code, as defined in section 422.3~~ factors recognized for federal and estate tax purposes, including discounts for minority interests and discounts for lack of marketability.

*Id.*  Aside from technical changes, the remaining language in section three largely ensures that the procedural provisions of Iowa Code section

524.1406 apply to "a bank organized under this chapter or a bank holding company as defined in section 524.1801." *Id.*

The explanation of House File 2197 states, "This bill provides for determination of value of the shares of a dissenting shareholder of a bank holding company." H.F. 2197, 78th G.A., Reg. Sess., explanation (Iowa 2000). The explanation also notes that the bill provides "a corporation that is a bank holding company may elect to have fair value of the bank holding company's shares determined under Code section 524.1406, notwithstanding the provisions of Code chapter 490 relating to corporations." *Id.* The explanation does not contain any suggestion that the applicability of marketability and minority discounts to *banks* has been affected in any way by the legislation. *Id.*

In light of this legislative history, we view the gist of the issue before us as this: Did the legislature in House File 2197 intend to expand the applicability of valuation factors, including lack of marketability and minority discounts, to transactions—other than bank mergers—involving *banks*? We conclude that the legislature intended in House File 2197 to expand the availability of the valuation factors, including lack of marketability and minority discounts, to bank holding companies, but the legislature did not intend to affect the preexisting law with respect to banks. We reach this conclusion for several reasons.

At the outset, we regard it as unlikely that the legislature would place a significant expansion of the application of minority and marketability discounts with respect to a wide variety of transactions in a division of the Iowa Banking Act dealing solely with bank mergers. Although such an approach is conceivable, it defies logical drafting and would be a trap for the unwary. Instead, if the legislature intended to broadly apply marketability and minority discounts to banks in all

transactions in which shareholders are entitled to appraisal rights, it would have more likely placed this language in the general provisions of the Iowa Business Corporation Act.

Indeed, this is exactly what the legislature did with respect to bank holding companies. In section two of House File 2197, the legislature announced in the Iowa Business Corporation Act in straight-forward language that "fair value" with respect to all appraisals involving dissenter's rights in the context of bank holding companies required consideration of minority and marketability discounts. 2000 Iowa Acts ch. 1211, § 2. The Iowa Business Corporation Act division on appraisal rights is precisely where one would expect such a broad provision to be placed. Interestingly, however, section two did not include references to banks, but only to bank holding companies. *Id.* The express inclusion of bank holding companies in section two implies the exclusion of banks. *Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008) (applying the canon *expressio unius est exclusio alterius*, which recognizes that " 'legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned.' " (quoting *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 637 (Iowa 2002))). When the legislature provides for expanded application of marketability and minority discounts for bank holding companies in the bright sunshine of Iowa Code section 490.1301, we do not think it very easy to imply that the legislature intended the same result to occur with respect to banks in the shadows of the merger provisions of Iowa Code chapter 524.

The language in section three of House File 2197 may be interpreted in a fashion consistent with this approach. The new language of section three appears to have been designed to blend the

preexisting law found in Iowa Code section 524.1406(3) with respect to banks with the change in law for bank holding companies contained in section two. *See* 2000 Iowa Acts ch. 1211, § 3. Section three altered 524.1406(3)(*a*) by striking the phrase "under this section" and replacing it with the phrase "of a bank organized under this chapter or a bank holding company as defined in section 524.1801." *Id.* The drafters apparently elected in the amended version of section 524.1406(3)(*a*) to describe both banks and bank holding companies by the provisions of the Code authorizing their existence. *See id.* A change from "this section" to "under this chapter" may be construed as a technical change designed to ensure definitional consistency and parallel structure.

Our approach is supported by the explanation of House File 2197. It is striking that the explanation of the bill is expressed solely in terms of expanding valuation discounts to bank holding companies. *See* H.F. 2197, explanation. The explanation does not mention the expansion of the applicability of these discounts to banks. *Id.* We think it unlikely that the legislature would have intended to significantly expand the applicability of these discounts with respect to banks in an ambiguous legislative provision that fails to mention the expansion in the explanation. *See City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 677 (Iowa 2005) ("We give weight to explanations attached to bills as indications of legislative intent.").

The Bank asserts that the title of House File 2197, as enacted by the legislature, suggests that the legislature intended to apply valuation discounts equally to banks and bank holding companies. *See State v. Iowa Dist. Ct.*, 630 N.W.2d 778, 781 (Iowa 2001) (explaining that the statute's title may be considered in determining legislative intent). House File 2197 was entitled, "An Act relating to the determination of fair value

of the shares of dissenting shareholders of a bank or bank holding company." 2000 Iowa Acts ch. 1211. The Bank argues that the title's reference to banks and bank holding companies is evidence of the legislature's intent to alter substantive provisions within the Iowa Banking Act with respect to valuation of a bank's shares.

House File 2197, however, included both substantive and procedural aspects. The inclusion of banks in the title does not necessarily mean that the substantive provisions of prior law regarding the applicability of minority and marketability discounts were affected.

Finally, the first two sections of House File 2197 both explicitly cross-reference section 524.1406. *Id.* §§ 1–2. Section one, which amended section 490.1330, provided that a bank holding company may elect to have fair value "determined as provided in *section 524.1406, subsection 3.*" *Id.* § 1 (emphasis added). Similarly, section two, which amended section 490.1301(4), provided that "[w]ith respect to a dissenter's shares that are the shares of a corporation that is a bank holding company as defined in section 524.1801, the factors identified in *section 524.1406, subsection 3, paragraph 'a,'* shall also be considered." *Id.* § 2 (emphasis added). Yet, House File 2197 failed to include a similar cross-reference to any provision within the Iowa Banking Act, or the Iowa Business Corporation Act for that matter, to manifest an intent to extend the valuation discounts to reverse stock splits of banks. *See id.* §§ 1–3. In fact, House File 2197 cross-references provisions of the Iowa Code that exclusively deal with bank holding companies. *Id.*

In sum, the statutory context and legislative history of section 524.1406(3)(*a*) lead us to conclude that the legislature did not intend to extend minority and lack of marketability discounts to the valuation of shares of a bank in a reverse stock split. Instead, applying the

established rules of statutory construction, we conclude that the amendment to section 524.1406(3)(*a*) was intended to effectuate the extension of the discounts to bank holding companies. If the legislature wishes to amend Iowa Code chapter 490 to apply the discounts to banks in a wide variety of appraisal rights contexts, including a reverse stock split, it is free to do so.

## IV. Conclusion.

We conclude that the minority and lack of marketability discount provisions of Iowa Code section 524.1406(3)(*a*) do not apply to reverse stock splits of banks. As a result, the district court judgment is affirmed. Because we find in favor of the Gundersons on the issue of statutory interpretation, we need not consider the other issues the Gundersons raise on this appeal.

**AFFIRMED.**