STATE of Iowa, Plaintiff–Appellant,

v.

John Paul THOMPSON,
Defendant–Appellee.

No. 11–0860.

Court of Appeals of Iowa.

April 11, 2012.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Rebecca L. Petig, County Attorney, for appellant.

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., Des Moines, for appellee.

Heard by VOGEL, P.J., and POTTERFIELD and DOYLE, JJ.

VOGEL, P.J.

The State seeks discretionary review of a ruling granting Mark Thompson's motion to suppress evidence of chemical test results for intoxication. Although the calibration record for the preliminary breath test (PBT) device did not contain an explanation of the "value and type of standard used," the PBT's use as a screening device was in substantial compliance with the applicable statutes and administrative rules. As such, the evidence from the subsequent DataMaster[1] test, showing Thompson's

1. The actual test administered to Thompson was performed on a "DataMaster" machine,

blood alcohol concentration of 0.141, should not have been suppressed. We therefore reverse.

## I. Background Facts and Proceedings

At the suppression hearing, the parties stipulated to the following facts:

1. Mr. Thompson is charged with Operating While Intoxicated, First Offense, in violation of Iowa Code section 321J.2.

2. The charge arises out of an incident taking place on December 25, 2010.

3. Officer Daniel Johnson investigated Mr. Thompson for operating while intoxicated after encountering Mr. Thompson allegedly sleeping in a running vehicle.

4. Due to inclement weather conditions, Officer Johnson [asked [2]] that Mr. Thompson accompany him to the police station for further testing.

5. Mr. Thompson agreed to Officer Johnson's request and voluntarily accompanied him to the Grinnell Police Department.

6. Once at the station, Officer Johnson asked Mr. Thompson to perform the Horizontal Gaze Nystagmus, the Walk and Turn, and One–Leg Stand field sobriety tests, all of which Mr. Thompson performed and Officer Johnson claims he "failed." [3]

7. Officer Johnson requested that Mr. Thompson consent to a preliminary breath test.

8. Mr. Thompson consented to the preliminary breath test, which indicated an alcohol concentration in excess of 0.08.

9. Officer Johnson then invoked implied consent at 3:57 a.m.

10. The only statutory ground upon which implied consent was invoked was that Mr. Thompson "submitted to a preliminary screening test (PBT) which indicated an alcohol concentration of eight hundredths (0.08) or more."

11. Following the invocation of implied consent, Mr. Thompson consented to chemical testing which indicated an alcohol concentration of .141.

12. A copy of the Grinnell Police Department calibration log for their preliminary breath tests produced pursuant to a subpoena duces tecum, is attached and incorporated herein by reference as Exhibit A.

13. Noticeably absent from the preliminary breath test calibration log is information regarding the type of standard used to accomplish the calibration.

On March 1, 2011, Thompson moved to suppress the final test result showing a blood alcohol concentration of 0.141, because the calibration log for the device used to perform the PBT did not state the type of standard used to calibrate the device. A suppression hearing was held on May 3. The district court granted Thompson's motion to suppress because Officer Johnson "relied solely on the PBT to invoke implied consent and obtain a breath specimen." Our supreme court granted the State's application for discretionary re-

---

but was often referred to in the trial testimony as the "Intoxilyzer," an older version of the blood alcohol content testing machine. We use them interchangeably for purposes of this opinion.

2. At the suppression hearing, the State requested and defense counsel agreed to change this word from "requested" to "asked."

3. By agreement of counsel, this was changed to state that Officer Johnson documented in his report that Thompson failed the tests.

view and stayed further proceedings pending resolution on appeal.

## II. Standard of Review

■ We review matters of statutory interpretation and application for errors at law. Iowa R.App. P. 6.907; *State v. Deng Kon Tong*, 805 N.W.2d 599, 601 (Iowa 2011). We are not bound by the district court's determination of law. *Deng Kon Tong*, 805 N.W.2d at 601.

## III. Analysis

■ Iowa Administrative Code rule 661–157.5(2) (2010) requires peace officers administering PBT screening to calibrate the device used at least once per month, using a dry gas standard. In addition,

The officer or officer's department shall maintain a record of each calibration. This record shall include:

a. The identity of the officer performing the calibration.

b. The date.

c. *The value and type of standard used.*

d. The unit type and identification number.

Iowa Admin. Code r. 661–157.5(2) (emphasis added).

The thrust of Thompson's argument is that with the undisputed flaw in the PBT calibration report, there was no statutory basis for invoking implied consent. Iowa Code section 321J.6(1) (2009) provides,[4]

A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A, and if any of the following conditions exist:

a. A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.

c. The person has refused to take a preliminary breath screening test provided by this chapter.

d. *The preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2.*

e. The preliminary breath screening test was administered to a person operating a commercial motor vehicle as defined in section 321.1 and it indicated an alcohol concentration of 0.04 or more.

f. The preliminary breath screening test was administered and it indicated an alcohol concentration less than the level prohibited by section 321J.2, and the peace officer has reasonable grounds to believe that the person was under the influence of a

---

4. Noticeably absent from section 321J.6(1) is any reference to failed field sobriety tests as a basis for invoking implied consent.

controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.

g. The preliminary breath screening test was administered and it indicated an alcohol concentration of .02 or more but less than .08 and the person is under the age of twenty-one.

(Emphasis added.) In this case, Officer Johnson invoked implied consent under Iowa Code section 321J.6(1)(d).

## A. Sequence of Events

Thompson does not dispute that Officer Johnson had "reasonable grounds to believe" Thompson was intoxicated. Iowa Code § 321J.6(1). Rather, Thompson focuses his argument on the sequence of events, contending that because there was not an arrest prior to the invocation of implied consent, the faulty PBT was the sole support for the invocation of implied consent. The State relies on the supreme court's opinion in *State v. Bird*, 663 N.W.2d 860 (Iowa 2003), for its argument that substantial compliance with the requirements for calibration of the PBT is sufficient to satisfy 321J.6(1).

In *Bird*, which came to the supreme court on further review from this court, the supreme court found the following facts:

David Bird's vehicle was stopped in Iowa City after he made an illegal turn. The arresting officer noticed an odor of alcohol, and Bird admitted he had been drinking. The officer testified that Bird told him he had consumed his last beer "about fifteen minutes ago." Bird failed a horizontal gaze and nystagmus test. The officer administered a PBT with an Alco–Sensor III machine about four minutes after the stop. The result, at .117, was over the legal limit. The offi-

cer detected a distinct sway. Because of the very cold weather conditions, the officer asked Bird to accompany him to the police station for further field sobriety tests. At the station, Bird failed two more field sobriety tests—the one-legged stand and the walk and turn. The officer then invoked implied-consent procedures and gave Bird an Intoxilyzer test. The result was .129. Bird was charged with OWI in violation of Iowa Code section 321J.2 (1999).

663 N.W.2d at 860–61. Thompson's, as well as the district court's, reading of *Bird* is the likely result of somewhat confusing language contained in the conclusory paragraph of the *Bird* decision. This paragraph reads, in pertinent part, "The PBT, together with the defendant's performance on the other tests, is sufficient to support the arrest and *subsequent* Intoxilyzer test." *Id.* at 862 (emphasis added). This reading indicates the arrest occurred prior to invoking implied consent and the giving of the Intoxilyzer/DataMaster test, such that the supporting factors for invoking implied consent would be both 321J.6(1)(a) (arrest) and 321J.6(1)(d) (PBT test over the legal limit). Lacking clarification on the sequence of events, we note that this court found the sequence of events in *Bird* to have been:

After Bird failed additional sobriety tests, [Police Officer] Zacharias invoked statutory implied consent procedures based on his belief Bird was driving while intoxicated and the PBT results earlier obtained. The resulting Intoxilyzer test indicated Bird's blood alcohol level was 0.129. Bird was arrested and subsequently charged with OWI.

*State v. Bird*, No. 01–1223, 2002 WL 31525669 (Nov. 15, 2002), *overruled by State v. Bird*, 663 N.W.2d 860 (Iowa 2003).[5]

---

**5.** Any subsequent discussion of *Bird* in this opinion is to the supreme court's published

Based on our reading of the two *Bird* cases, we can ascertain that the arrest in *Bird* occurred subsequent to the invocation of implied consent and that the sole statutory basis for invocation of implied consent was the failed PBT test.

Similar to *Bird,* Thompson was asked to perform the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test, failing all three before invocation of implied consent. After these tests were administered, Officer Johnson obtained Thompson's consent to perform a PBT, which indicated a blood alcohol concentration in excess of 0.08. As in *Bird,* the failed PBT was the sole statutory basis for invocation of implied consent, but was supplemented by the previous field sobriety test results and supported Officer Johnson's administration of the subsequent DataMaster test.

### B. Calibration Record

Having determined that the sequence of events in this case is factually similar to that of *Bird* and that, in both cases, the sole statutory basis for invoking implied consent was a failed PBT test with an incomplete calibration log, we now determine whether an omission in the calibration log of the test standard used in calibrating the PBT device renders the underlying PBT test insufficient to invoke implied consent.

In *Bird,* the supreme court held that where a PBT device is approved by the commissioner and the calibration log fails to indicate "[t]he value and type of standard used," the calibration of the machine may still "substantially compl[y]" with the administrative rules such that use of the PBT supports a subsequent arrest and the administration of an Intoxilyzer/DataMaster test. *See Bird,* 663 N.W.2d at 861–62 ("The PBT, together with the defendant's performance on the other field tests, is sufficient to support the arrest and subsequent Intoxilyzer test."). The court in *Bird* further explained:

In considering what level of compliance is required for PBT testing, we have noted the limited role of these procedures: they are used only for screening purposes, to decide if an arrest should be made. The results are not admissible in an OWI trial. In fact, a PBT is only one of the means for screening. The horizontal gaze nystagmus, walk-and-turn test, and one-legged standing test are approved as standardized and objective field sobriety tests. Bird was given these tests and failed them all. The PBT test only supplemented the field tests and confirmed the officer's decision to arrest Bird.

We believe the calibration of the machine substantially complied with the applicable statutes and administrative rules. If we were to require rigid adherence to the documentation requirements for the value and type of standard used in calibration, this would not reasonably advance the purposes of the PBT, which is to provide, *perhaps with other tests,* the information necessary to make an informed decision regarding a possible arrest.

*Id.* at 862 (emphasis added) (internal citation omitted).

In *State v. Albrecht,* our supreme court held that despite the recommendations of a PBT device manufacturer to administer two PBT tests in the event that the first is positive, a second test is not required to invoke implied consent. 657 N.W.2d 474, 479–81 (Iowa 2003). The sequence of events in *Albrecht* was similar to that of *Bird* and the case at hand. *See id.* at 476 (setting forth the facts of the case). The

decision in that case.

officer, detecting a strong odor of alcohol, administered a horizontal gaze nystagmus test, which Albrecht failed. *Id.* Albrecht then admitted he had been drinking. *Id.* The officer then administered a PBT, which gave a reading of 0.109. *Id.* Due to the weather, the officer took Albrecht to the police station, where additional sobriety tests were administered. *Id.* The officer invoked implied consent based on the failed PBT test. *Id.* An Intoxylizer test returned a blood alcohol concentration of 0.121. *Id.* Albrecht was then arrested. *Id.* Albrecht argued the Intoxylizer results should be suppressed because only one PBT test—and not two as recommended by the PBT device manufacturer if the first test came back positive—was administered. *Id.* at 477–78.

In *Albrecht*, the court concluded,

> Because of the PBT's unreliability, the legislature chose to make the results inadmissible in evidence. However, the PBT provides officers with the tool of a quick, convenient test to assist officers in determining whether an arrest should be made. The PBT no longer fulfills the legislative intent that it serve as a quick, convenient test when officers must administer a second PBT.

*Id.* at 479–80 (internal citation and quotation marks omitted). In this statement, the court recognized the legislature accounted for any possible inaccuracy in an underlying PBT test by making such evidence inadmissible. The court further recognized the burden placed on officers in administering two PBT tests. Requiring a police officer to first verify that a PBT testing device has been calibrated using a dry gas standard prior to administering a PBT test places a similar burden on police officers. If the intent of the statute is that a PBT "serve as a quick, convenient test," such a requirement would undermine the legislative intent of the statute. *Id.*

The district court, in reviewing the statutory grounds for invoking implied consent, concluded Officer Johnson "relied solely on the PBT to invoke implied consent and obtain a breath specimen." However, in light of the *Bird* and *Albrecht* decisions, we find this reading too narrow. Similar to *Bird*, Thompson's implied consent invocation was made solely on the basis of the failed PBT with an incomplete calibration log. Moreover, the threefold purpose underlying the procedural requirements of section 321J.6 is "to protect the health of the person being tested, to guarantee accuracy of test results used in judicial proceedings, and *to prevent citizens from indiscriminate testing or harassment.*" *State v. Satern*, 516 N.W.2d 839, 841 (Iowa 1994) (emphasis added). Prior to administering the PBT, Officer Johnson was equipped with the knowledge that Thompson had just failed three field sobriety tests. Therefore, when asked to perform a PBT test, Thompson was not a citizen subject to "indiscriminate testing or harassment." *Id.* Then, when Officer Johnson had the result of the PBT test, indicating a blood alcohol concentration in excess of .08, he checked the *one* applicable box on the implied consent form. The checking of this box, when paired with the reasonable grounds Officer Johnson had to believe Thompson was operating a motor vehicle while intoxicated, established substantial compliance with the statute, such that implied consent was properly invoked.

We therefore conclude that although the calibration record did not contain an explanation of the "value and type of standard used," the PBT's use as solely a "screening device" was in "substantial compliance" with the applicable statutes and administrative rules. *Bird*, 663 N.W.2d at 862. Moreover,

> rigid adherence to the documentation requirements for the value and type of

standard used in calibration ... would not reasonably advance the purposes of the PBT, which is to provide ... the information necessary to make an informed decision regarding a possible arrest.

*Id.* As such, the evidence from the subsequent DataMaster test, showing Thompson's blood alcohol concentration of 0.141, should not have been suppressed. We therefore reverse.

**REVERSED.**

MULLINS, J., takes no part.