PER CURIAM.
12Relator seeks review of the denial of his motion to quash. For the following reasons, we deny the writ application.
Relator was charged by bill of information with two counts of possession with intent to distribute a Schedule I controlled dangerous substance (CDS) or its analogue in violation of La. R.S. 40:966(A)(1). Relator was alleged to have in his possession Naphthalen-l-yl-(l-pentylindol-B-yl) methanone [also known as l-Pentyl-8-(l-naphthoyl)indole or JWH-018] (synthetic marijuana) “or its analogue 4-Ethylna-phthalen-lyl-(Pentylindol-B-yl) methadone.” [1] (JWH-210). The offenses were alleged to have occurred on March 16, 2011, and March 24, 2011. Relator filed a motion to quash, wherein he alleged that possession of JWH-210 was not illegal when he was arrested, as it was not included in Schedule I at the time of the offenses. After an evidentiary hearing, the trial court denied the motion.
Relator makes three claims. First, he contends the trial court failed to properly interpret La. R.S. 40:966(A)(1). Relator asserts that in order to enforce the language of the statute, the controlled dangerous substances or their analogues must be classified in Schedule I. Relator argues that the trial court erred in ruling that it was illegal for relator to possess with the intent to distribute JWH-210, without first deciding whether JWH-210 was listed in Schedule I.
La. R.S. 40:966(A)(1) provides that it shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a CDS or CDS analogue classified in Schedule I. Prior to its amendment by 2011 La. Acts, No. 420, §§ 1 and 2, La. R.S. 40:964, Schedule I(C)(32)(c) included synthetic cannabinoids and specifically listed N aphthalen-l-yl-(l-pentylindol-3-yl) methanone [also known as l-Pentyl-3-(l-naphthoyl)indole or JWH-018].
|aLa. R.S. 40:961(8) defines a controlled substance analogue as a substance the chemical structure of which is substantially similar to the chemical structure of a controlled dangerous substance in Schedule I or II of R.S. 40:964, which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a CDS in Schedule I or II.
*603 At the hearing on the motion to quash, Dr. Mark Trudell, a state witness who was qualified as an expert in organic chemistry, explained the chemical makeup of the two compounds at issue (JWH-018 and JWH-210). He stated that they are in the same class of organic molecules, and the only real difference between the two compounds was a “two carbon substi-tuent.” According to Trudell, the difference did not substantially change the chemical structure of the two compounds, but affected the potency, and JWH-210 was more potent. Trudell stated both compounds were cannabinoids, and there was no doubt in his mind that the two compounds were substantially similar. Trudell also testified that the JWH stood for the initials of the chemist who developed these types of synthetic cannabinoids.
JWH-018 was listed in Schedule I at the time the instant crimes were allegedly committed, but JWH-210, the compound possessed by relator, was not listed in Schedule I. However, under La. R.S. 40:966, it was unlawful to possess with the intent to distribute analogues of controlled dangerous substances listed in Schedule I. According to Trudell, JWH-018 and JWH-210 were substantially similar to each other. Thus, JWH-210 is an “analogue” to JWH-018 as defined by La. R.S. 40:961. In reading the statutes together, the only reasonable conclusion is that the legislature intended that it be illegal to possess any Schedule I drug, as well as any substance with a substantially similar structure. Because JWH-210 was Ran analogue to JWH-018, possession of the substance at the time the instant crimes were allegedly committed was illegal. Thus, this claim lacks merit.
In his second claim, relator contends that charging relator with illegal possession of JWH-210 was an ex post facto application of the law, as the substance was not included in La. R.S. 40:964 at the time the alleged crime was committed. Relator further argues that because the statute did not include analogues of the listed synthetic cannabinoids in Schedule I until the statute was revised and enacted on July 15, 2011, it was clear that the legislature did not intend the original version of the statute to include analogues.
Ex post facto laws are prohibited by Article I, sections 9 and 10 of the United States Constitution and Article I, section 23 of the Louisiana Constitution. The focus of the ex post facto inquiry is whether a new law redefines criminal conduct or increases the penalty by which a crime is punishable. State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272, 1280.
Because JWH-210 was an analogue of JWH-018, it was illegal to possess at the time the crimes allegedly occurred. Thus, while the wording of the statute was amended to specifically include analogues of the listed synthetic cannabinoids in Schedule I in July 2011, analogues already were included based on a reading of all the involved statutes. It is irrelevant that the legislature subsequently amended the statute. Considering the above, there was no ex post facto application of the law in this case.
In his third claim, relator contends that La. R.S. 40:961(8) is unconstitutionally vague. He sets forth that the definition of the controlled substance analogue relies on the phrase “substantially similar,” but the legislature failed to define or quantify this term. Relator argues that the mere fact the State had to call an expert to testify that JWH-018 and JWH-210 were substantially [ .^similar proves that a person of common intelligence would not know that possession of JWH-210 was illegal. According to relator, lumping all drugs of a *604 large class together with the language of “substantially similar” without clearly defining the necessary relationship between the chemical structure and the effect of the parent drug and its alleged analogue makes the law unconstitutionally vague and subject to arbitrary and discriminatory enforcement.
A statute is presumed to be valid and its constitutionality should be upheld whenever possible. State v. Thomas, 2004-0559 (La.1/19/05), 891 So.2d 1233, 1235; State v. Griffin, 495 So.2d 1306,1308 (La.1986). Louisiana criminal statutes must be “given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La. R.S, 14:3.
It is well established that a vagueness challenge to a statute not involving First Amendment freedoms must be examined in the light of the facts of the case at hand and as applied to the particular defendant. Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857-58, 100 L.Ed.2d 372 (1988); United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975). Under the “void-for-vagueness” doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of an accused. The statute must not contain a standard so vague that the public is uncertain as to the proscribed conduct and the fact finder is unfettered by any legally fixed standards as to what is prohibited by the statute. See State v. Turner, 2005-2425 (La.7/10/06), 936 So.2d 89, cert. denied, 549 U.S. 1290, 127 S.Ct. 1841,167 L.Ed.2d 337 (2007).
| (¡Although La. R.S. 40:961(8) does not contain a definition of “substantially similar,” the words used in the statute may be easily understood when “taken in them usual sense” and “with reference to the purpose of the provision.” See La. R.S. 14:3. The statute at issue gives adequate notice to individuals that certain contemplated activity is proscribed and sets forth adequate standards for determining the guilt or innocence of the accused. Although the chemical makeup of the drugs are complex, if notice is clearly given that certain forms of synthetic marijuana are illegal, then it would be easily understood and adequate notice given that other substantially similar forms of synthetic marijuana are also illegal. This claim lacks merit.
Considering the above, it does not appear that the trial court erred in denying the motion to quash.
Accordingly, this writ application is DENIED.
WRIT DENIED.

. The information regarding the chemical name of the analogue JWH-210 was taken from the bill of information.