STATE of Iowa, Plaintiff–Appellee,

v.

Cody James Darland HEINRICHS, Defendant–Appellant.

No. 12–2174.

Court of Appeals of Iowa.

Sept. 18, 2013.

Christopher Soppe of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Ralph Potter, County Attorney, and Peter Blink, Assistant County Attorney, for appellee.

Considered by VOGEL, P.J., and DANILSON and TABOR, JJ.

TABOR, J.

Cody Heinrichs told police he bought the product called "100% Pure Evil botanical potpourri" from a Waterloo liquor store. The State prosecuted him for possession of a controlled substance—specifically, synthetic Cannabis. He now challenges his conviction under Iowa Code sections 124.401(5) and 124.204(4)(u) (2011) on due process grounds, alleging the statutes were unconstitutionally vague as applied to him. Because an ordinary person could understand a chemical substance designed to simulate the hallucinogenic effects of marijuana would be prohibited under those code sections, we find no due process violation and affirm his conviction.

## I. Background Facts and Proceedings

While patrolling the Fifth Street Bridge on December 20, 2011, Waterloo police noticed a silver Kia with expired plates; Heinrichs was a passenger in the Kia. The stopping officer noticed an odor of marijuana coming from the car. After asking Heinrichs to step out of the car, the officer asked him if he "had anything on him." Henrichs said he had a pipe for smoking "incense." The officer also found Henrichs in possession of a small black foil bag labeled "100% Pure Evil" that said it was "not for human consumption." Heinrichs later identified the substance as "K–2" and told the officer he bought it over the counter at the New Star liquor store.[1]

The officers arrested Heinrichs for possessing a controlled substance. The State filed a trial information on February 1, 2012, charging him with possession of "synthetic cannabis," a serious misdemeanor under section 124.401(5). The State also filed a notice of additional minutes on May 17, 2012, outlining the expected testimony of state criminalist Megan Kelly. She was prepared to testify the substance seized from Heinrichs contained the chemical "AM–2201," which is "designed to imitate the [effects] of cannabis on the brain."

Heinrichs filed a motion to dismiss; alleging the substance he possessed was tested and was "not one of the enumerated substances" in section 124.204. The motion asserted the statute was "unconstitutionally vague under the United States Constitution and the Constitution of the State of Iowa (which provides greater protection to individuals than the federal counterpart)." The motion also alleged "[t]he law did not allow reasonable people to understand what conduct is prohibited."

The district court heard arguments on the motion on August 13, 2012. On September 12, 2012, the court denied the motion to dismiss, concluding section 124.204(4)(u) was not vague as applied to Heinrichs. By agreement of the parties, the court also considered Heinrich's guilt based on the minutes of testimony. The court found him guilty under sections 124.401(5) and 124.204(4)(u), finding the substance he possessed was the synthetic equivalent of the substances contained in the Cannabis plant. The court sentenced

---

1. The record does not reflect whether the officers pursued an investigation of the liquor store for selling this substance.

Heinrichs to two years of incarceration, suspending the entire term.

Heinrichs now appeals that conviction, arguing section 124.204(4)(u) is unconstitutionally vague as applied to him. He argues the statute does not give persons of ordinary understanding fair notice of what conduct is prohibited and does not offer sufficient guidance to prevent arbitrary or discriminatory enforcement.

## II. Scope and Standard of Review

■ Heinrichs raises his claim under both the federal and state due process clauses. *See* U.S Const. amend. XIV, § 1 ("No state shall ... deprive any person of life, liberty, or property, without due process of law."); Iowa Const. art. I, § 9 ("No person shall be deprived of life, liberty, or property, without due process of law."). We review constitutional issues de novo. *State v. Nail,* 743 N.W.2d 535, 538 (Iowa 2007).

Our supreme court has deemed the federal and state due process clauses to be "'identical in scope, import, and purpose.'" *Id.* at 538–39 (Iowa 2007) (quoting *In re Guardianship of Hedin,* 528 N.W.2d 567, 575 (Iowa 1995) (internal citations omitted)). On appeal, neither party has suggested we approach the due process analysis under the Iowa Constitution differently than under the parallel provision of the United States Constitution. Therefore, for the purposes of this opinion, we will treat the provisions as one. *See Sanchez v. State,* 692 N.W.2d 812, 819 (Iowa 2005); *Racing Ass'n of Cent. Iowa v. Fitzgerald,* 675 N.W.2d 1, 6 (Iowa 2004).

## III. Governing Law

The trial information charged Heinrichs under Iowa Code section 124.401(5) ("It is unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a serious misdemeanor for a first offense....."). At the hearing on the motion to dismiss, defense counsel questioned whether the State was alleging the controlled substance fell under section 124.204(4)(u) or 124.204(4)(ai)(5). Both subsections described schedule I substances known as "hallucinogenic substances." *See* Iowa Code § 124.204(4).

Section 124.204(4)(u) reads as follows:

Tetrahydrocannabinols, except as otherwise provided by rules of the board for medicinal purposes, meaning tetrahydrocannabinols naturally contained in a plant of the genus Cannabis (Cannabis plant) as well as synthetic equivalents of the substances contained in the Cannabis plant, or in the resinous extractives of such plant, and synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following:

(1) 1 cis or trans tetrahydrocannabinol, and their optical isomers.

(2) 6 cis or trans tetrahydrocannabinol, and their optical isomers.

(3) 3, 4 cis or trans tetrahydrocannabinol, and their optical isomers. (Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.)

Section 124.204(4)(ai)(5) was amended in

both 2011 and 2012.[2] The statute in effect at the time of Heinrich's arrest read as follows:

Any substance, compound, mixture or preparation which contains any quantity of any synthetic cannabinoid that is not approved as a pharmaceutical, including but not limited to the following:

(a) CP 47, 497 and homologues 2–[(1R, 3S)–3–hydroxycyclohexyl]–5–(2–methyloctan–2–yl)phenol).

(b) HU–210[(6aR,10aR)–9–(hydroxym ethyl)–6,6–dimethyl–3–(2–methyloctan–2–yl)–6a,7,10,10a–tetrahydrobe chromen–1–ol)].

(c) HU–211(dexanabinol, (6aS,10aS)–9–(hydroxymethyl)–6,6–dimethyl–3–(2 –methyloctan–2–yl)–6a,7,10,10a–tetrahydrobenzo[c] chromen–1–ol).

(d) JWH–018 1–Pentyl–3–(1–naphthoyl)indole.

(e) JWH–073 1–Butyl–3–(1–naphthoyl)indole.

(f) JWH–200 [1–[2–(4–morpholinyl)ethyl]–1H–indol–3–yl]–1–naphthalenyl-methanone.

Iowa Code § 124.204(4)(ai)(5) (Supp.2011).

The 2012 legislative amendment specifically added "AM2201 1–(5–fluoropentyl)–3–(1–naphthoyl)indole" to the list of synthetic cannabinoids. Iowa Code § 124.204(4)(ai)(5)(b)(xi) (2013). Both parties agree that amendment does not apply to Heinrichs's offense.

At the motion-to-dismiss hearing, the prosecutor argued the plain language of section 124.204(4)(u) would allow a reasonable person to know the chemical AM–2201 was prohibited, but resisted limiting its case to a specific subsection of 124.204, asserting: "[T]he trial information must simply allege that he was in possession of a controlled substance. Period. And then there can be findings later throughout the trial of whether the substance possessed actually was controlled." In its order rejecting Heinrichs's motion to dismiss, the district court analyzed the constitutionality of section 124.204(4)(u). That is also the subsection the parties debate on appeal.[3] Accordingly, section 124.204(4)(u) will be the focus of our appellate review.

## IV. Constitutional Analysis

■ Heinrichs argues he was denied due process because section 124.204(4)(u) is overly vague. The void-for-vagueness doctrine has three foundations:

First, a statute cannot be so vague that it does not give persons of ordinary understanding fair notice that certain conduct is prohibited. Second, due process requires that statutes provide those clothed with authority sufficient guidance to prevent the exercise of power in an arbitrary or discriminatory fashion. Third, a statute cannot sweep so broadly as to prohibit substantial amounts of constitutionally-protected activities, such as speech protected under the First Amendment.

*Nail*, 743 N.W.2d at 539.

Because Heinrich argues the statute is vague as applied to him, only the first two

---

**2.** State and federal governments are scrambling to keep up with the proliferation of synthetic substances marketed by drug manufacturers who change their formula when a previous version is specifically outlawed. *See* Jake Schaller, *Not for Bathing: Bath Salts and the New Menace of Synthetic Drugs*, 16 J. Health Care L. & Pol'y 245, 268 (2013) (hereinafter Schaller).

**3.** The State does venture on appeal that section 124.204(4)(ai)(5) "more likely governed" the substance possessed. Because the State did not provide the district court with that direction at trial, we do not switch to that path on appeal. *See generally DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002).

foundations are at issue. *See State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000) (explaining void-for-vagueness doctrine requires a criminal statute to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement). A facial challenge would implicate the third foundation. *See State v. Dalton*, 674 N.W.2d 111 (Iowa 2004) (finding defendant lacked standing to mount facial challenge because reckless driving statute did not interfere with a substantial amount of protected conduct).

■ In assessing whether a statute is void for vagueness, we presume constitutionality and give the statute any reasonable construction to uphold it. *State v. Millsap*, 704 N.W.2d 426, 436 (Iowa 2005). It is incumbent on Heinrichs to "negate every reasonable basis to sustain" the provision. *See Dalton*, 674 N.W.2d at 121.

■ According to the lab analysis, Heinrichs possessed a "potent synthetic cannabinoid." He nevertheless contends a reasonable person could not have known it was contraband. He argues section 124.204(4)(u), when read with the rest of section 124, "does not define the criminal offense with sufficient definiteness that ordinary people could understand what conduct is prohibited." He complains: "[O]ne needs an advance degree in chemistry to understand what substances are illegal." Heinrichs also emphasizes: "Nowhere in schedules I through V of division II is 'K–2', '100% Pure Evil botanical potpourri' or AM–2201 listed as a controlled substance." He asserts an ordinary person's confusion would be compounded by the fact that "K–2" was being sold over the counter at Waterloo retail locations.

■ As an initial point, we decline to find the schedule of controlled substances is constitutionally defective because it uses scientific terms that are obscure to persons of ordinary intelligence lacking in specialized knowledge. "The use of scientific or technical terminology or terms of art common in a regulated field does not automatically render a statute unconstitutionally vague." *United States v. Caseer*, 399 F.3d 828, 836–837 (6th Cir.2005). We likewise reject Heinrichs's assertion the state legislature needed to specifically name the substance in the code to avoid a vagueness challenge. "The fact that a type of contraband may have various nicknames on the street does not render a statute punishing possession of that contraband invalid simply because it fails to list all of the then current nicknames." *United States v. Levy*, 904 F.2d 1026, 1033 (6th Cir.1990).

The harder question is whether the catch-all language of section 124.204(4)(u) adequately notified Heinrichs that possession of AM2201 was illegal. That code section includes tetrahydrocannabinols, meaning the compounds naturally contained in Cannabis plants, as well as "synthetic equivalents of the substances contained in the Cannabis plant, or in the resinous extractives of such plant, and synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant...." Iowa Code § 124.204(4)(u). The code section goes on to list examples of synthetic equivalents.

■ We will not find a statute to be unconstitutionally vague if the meaning of the words used can be "fairly ascertained by reference to similar statutes, other judicial determinations, reference to the common law, to the dictionary, or if the words themselves have a common and generally

accepted meaning." *See State v. Lee,* 315 N.W.2d 60, 62 (Iowa 1982).

Here, we look to the dictionary definitions of the critical terms in section 124.204(4)(u). "Cannabis" is defined as "any of preparations (as marijuana or hashish) or chemicals (as THC) that are derived from hemp and are psychoactive." *Cannabis Definition,* Merriam–Webster, http://www.merriam-webster.com/dictionary/cannabis (last visited Aug. 30, 2013). "Synthetic" means "produced artificially". *Synthetic Definition,* Merriam–Webster, http://www.merriam-webster.com/dictionary/synthetic (last visited Aug. 30, 2013). "Equivalent" is defined as "corresponding or virtually identical especially in effect or function". *Equivalent Definition,* Merriam–Webster, http://www.merriam-webster.com/dictionary/equivalent (last visited Aug. 30, 2013). We find the terminology used in section 124.204(4)(u) would provide persons of ordinary understanding the ability to ascertain what substances were prohibited. *See State v. Henderson,* 478 N.W.2d 626, 629 (Iowa 1991) (rejecting vagueness challenge to simulated controlled substance statute).

■ The legislature's 2012 amendment adding the compound AM2201 at section 124.204(4)(ai)(5)(b)(xi) does not advance Heinrichs's vagueness argument. A statutory revision may indicate either a change in the law or a clarification of existing law. *State ex rel. Schuder v. Schuder,* 578 N.W.2d 685, 687 (Iowa 1998). Given the catch-all language in section 124.204(4)(u) ("as well as synthetic equivalents of the substances contained in the Cannabis plant, ... and synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant"), the legislature may have just wanted to take a belt-and-suspenders approach by specifically listing

AM2201 and several other newly recognized compounds in section 124.204(4)(ai)(5). *See Schaller,* at 267–68 (describing how regulators are "necessarily playing 'catch-up'" with manufacturers who tweak their formulas to circumvent state laws). Moreover, Heinrichs is not arguing the district court erred in finding him guilty of possession of a controlled substance as defined in subsection (u).

■ Heinrichs next contends section 124.204(4)(u) does not provide authorities with sufficient guidance to prevent the arbitrary or discriminatory exercise of power. He reads the statute as leaving too much up to chemists in determining which synthetic substances have "similar chemical structures and pharmacological activity to Cannabis." While it is true the chemical makeup of drugs can be complex, the statute gives fair notice that synthetic substances with chemical structures comparable to marijuana and that have the same effect are illegal. *See generally State v. Beaudette,* 97 So.3d 600, 604 (La.Ct.App. 2012) (rejecting vagueness challenge to phrase "substantially similar" in controlled substance statute).

In *State v. Atley,* 564 N.W.2d 817, 832 (Iowa 1997), our supreme court rejected an argument similar to that urged by Heinrichs. Atley claimed his mushroom farm did not clearly fall under the proscription against "material containing psilocybin" at section 124.204(4)(s). *Atley,* 564 N.W.2d at 831. The *Atley* court noted under section 124.401, the State was required to prove the defendant knowingly or intentionally possessed a controlled substance and knew it was a controlled substance. *Id.* at 832. The court held "by requiring scienter as an element of the offense, law enforcement officials are sufficiently able to distinguish between those persons who innocently gather wild psilocybe mushrooms and those who specifically cultivate them to

profit from their hallucinogenic qualities." *Id.* (noting scienter requirement mitigated law's vagueness).

The same can be said for Heinrichs's possession of the "K–2" product called "100% Pure Evil." Whatever doubts exist about the applicability of section 124.204 to those who may innocently purchase the substance over the counter at a retail store, Heinrichs's conduct falls squarely within the statute's intent to prohibit the possession of hallucinogenic substances. *See Hunter*, 550 N.W.2d at 465. The packaging warned the substance was "not for human consumption," yet Heinrich was using a pipe to smoke it.[4] The Waterloo officers were sufficiently able to distinguish between persons who may have innocently possessed a "botanical potpourri"

and users who knew products sold as "incense" offered hallucinogenic properties.

Based on the facts of this case, we do not find Heinrichs has carried his heavy burden to negate every rational basis for sustaining section 124.204(4)(u). Given a reasonable construction, we find the statute gives fair notice of what substances are outlawed and provides an evident enforcement standard. Therefore, the statute is not void for vagueness as applied to Heinrichs.

**AFFIRMED.**

---

**4.** Commentators have concluded "a conspicuous 'not for human consumption' label has in many ways become code for 'this product is a drug.'" Timothy P. Stackhouse, 54 Ariz. L.Rev. 1105, 1131 (2012).