# IN THE COURT OF APPEALS OF IOWA

No. 16-1525
Filed February 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIMOTHY ALVIN NEWTON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Ringgold County, Dustria A. Relph,

Judge.

        A defendant appeals his convictions for operating while intoxicated, second

offense, and child endangerment.  **REVERSED IN PART AND REMANDED.**

        Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Timothy Newton appeals his convictions for operating while intoxicated (OWI), second offense, and child endangerment. He claims his OWI conviction must be reversed because the jury was instructed on the "any amount of a controlled substance" alternative in Iowa Code section 321J.2(1)(c) (2014), and this alternative is unconstitutionally vague and violates his due process rights.[1] He also claims his stipulation to his prior OWI offense was invalid because it was not knowingly and voluntarily entered. Finally, he claims his sentence must be vacated and this case remanded for a new sentencing hearing because the court considered unproven offenses when determining his sentence. We affirm Newton's OWI conviction as we conclude section 321J.2(1)(c) is not unconstitutionally vague and is rationally related to the purpose of the OWI statute. However, because Newton was not afforded a proper colloquy when stipulating to his prior conviction, we reverse his conviction and sentence for OWI, second offense, and remand this case for proceedings consistent with this opinion. Because of this reversal, we need not address the claims he makes regarding his sentencing hearing.

## I. Background Facts and Proceedings.

Eric Fell arrived at his rural home on the night of September 3, 2014, to find a vehicle and a detached trailer in the ditch in front of his home and a young boy walking up to the road. Fell contacted the sheriff's office to report the accident. He then drove his tractor to the location of the vehicle to assist with pulling the

---

[1] Newton does not separately challenge the conviction for child endangerment. *See* Iowa Code § 726.6.

vehicle and trailer from the ditch. Deputy Sheriff Samuel Pitt arrived on scene and instructed Fell not to move either the trailer or the vehicle. Deputy Pitt contacted the boy and the adult in the vehicle, identifying them as Newton and his eleven-year-old son. The vehicle was running, and Newton was seated in a reclined position behind the steering wheel with the driver's side door open and with his son standing next to the driver's side. Newton told the deputy he was waiting for the property owner's tractor to arrive and was surprised when the deputy pointed out the tractor was already present. Deputy Pitt noted this was odd because the tractor was very loud with bright running lights and was so close to the disabled vehicle "that it would have been almost impossible to be unaware of its presence."

Deputy Pitt suspected Newton was impaired almost immediately because Newton was agitated and disoriented, slurred his speech, and had difficulty maintaining his balance as he exited the vehicle. Newton explained to the deputy that he became stuck in the ditch when he attempted to turn around on the highway after missing his turn. Deputy Pitt asked Newton for his driver's license, and Newton initially responded he did not have it with him. After Deputy Pitt pointed out to Newton his wallet was located directly under Newton's legs on the floor of the vehicle, Newton then proceeded to search through his wallet looking for his license, thumbing past it twice before finding it. Deputy Pitt asked Newton whether he was "all right," and Newton replied it was "one of those Sunday night things" and then corrected himself to say it was Tuesday night. However, the accident occurred on a Wednesday night.[2] When Deputy Pitt corrected Newton on the day

---

[2] The incident occurred the week of Labor Day.

of the week, Newton seemed surprised. Newton denied consuming any alcohol or taking any medication, but he did say he did not "feel well."

A second deputy, Deputy Landon White, arrived at the scene, and Deputy Pitt relayed to him that he believed Newton was impaired. Upon his arrival, Deputy White attempted to obtain the assistance of an officer who had a highly specialized certification in impaired driving investigations, but no officers with that certification were available. Therefore, after questioning Newton and observing his demeanor and disorientation, Deputy White conducted the standard field sobriety test he was certified to administer. Deputy White knew Newton had a prior leg injury, so he did not administer the one-leg stand test or the walk-and-turn test. Newton did not pass the horizontal gaze nystagmus test or the lack of convergence test, but no nystagmus was present during the vertical gaze nystagmus test, and Newton did not have difficulty performing the modified Romberg balance test. Deputy White then decided to invoke implied consent, and Newton agreed to accompany the deputy to the station to provide a urine sample.

As the deputy proceeded to drive to the station, Newton again indicated he was confused as to where he was located in relation to town, and when they arrived at the station, Deputy White thought it was strange Newton laid down on the wooden bench in the holding area. After reading the implied-consent advisory, Deputy White requested Newton provide a urine sample. Newton responded that he would prefer to provide a blood sample. Deputy White informed Newton of his right to have an independent test done with a blood sample if he would like but insisted he was requesting a urine sample. Newton then provided the sample, which was sent to the department of criminal investigations lab. Newton's urine

sample came back positive for benzodiazepines, opiates, cocaine metabolites, marijuana metabolites, and tricyclics. Deputy White testified that the impairment he observed during his field testing would have been consistent with the use of benzodiazepines, opiates, marijuana, and tricyclics.[3]

Newton offered expert testimony at trial. The expert reviewed the video evidence of the incident and testified he did not see any signs of impairment in Newton. He further testified, "There is no evidence to conclude that he was impaired due to any of the drugs cited or the metabolites cited within the testing. The field testing is absolutely not conclusive." He further asserted "urine testing cannot determine impairment." Instead, it was his position that blood testing "is going to give us better information as to [the] relationship to impairment."[4]

Newton also offered the testimony of his wife, who stated he was lethargic and ill the day of the accident and had been ill for several days. Newton's son also testified that his father was sick that day and that his grandfather, Newton's father, drove the vehicle and trailer into the ditch when he was attempting to turn around because the GPS told them they had missed their turn. The son further testified Newton's father got a ride from the scene to retrieve a garbage truck to assist in pulling the vehicle and trailer from the ditch, and after Newton's father left, Newton drove the vehicle to attempt to get both the vehicle and trailer out of the ditch but

---

[3] We also note the trial testimony from a criminalist with the Iowa Division of Criminal Investigation Criminalistics Laboratory established the laboratory follows the nationally accepted standards establishing threshold levels of certain substances before a positive test result is reported. This is to prevent positive test results for people who may have been passively exposed to certain substances. Newton tested above the applicable threshold amounts.

[4] Although Newton was advised of his right to independent testing on the night in question, he did not seek such testing.

was ultimately unable to do so. Newton also offered the testimony of his father, who confirmed he was the one driving when the vehicle and trailer initially became stuck in the ditch. Newton's father testified he was able to get a ride to town to get the garbage truck but the truck had a flat tire. By the time he repaired the tire and got back to the scene, everyone was gone.

After four days of testimony, the jury found Newton guilty as charged of OWI and child endangerment. Following the verdict, the defense informed the court that Newton was willing to stipulate that it was his second OWI offense. The court engaged Newton in the following colloquy:

> First I want to ask, is what you're about to do and statements you're about to make concerning that previous conviction, are those being given freely and without any duress, threats, or coercion?
> THE DEFENDANT: Yes.
> THE COURT: All right. And are you at this time under the influence of any alcoholic beverage or medication?
> THE DEFENDANT: No.
> THE COURT: Have you in the past six months been hospitalized for the treatment of any physical or mental condition?
> THE DEFENDANT: No.
> THE COURT: And were you on or about February 2, 2007, convicted of the crime of operating while intoxicated in Polk County, Iowa?
> THE DEFENDANT: Yes.
> . . . .
> THE COURT: All right. The court finds that you are knowingly and voluntarily making—or stipulating that you have in fact previously been convicted of operating while intoxicated.

The court denied Newton's posttrial motions and sentenced him to two years in prison for each offense, to run concurrently. The fines were suspended, and Newton's driver's license was suspended for one year. Newton appeals.

**II. Scope and Standard of Review.**

Our review of a challenge to the constitutionality of a statute is de novo. *State v. Thompson*, 836 N.W.2d 470, 483 (Iowa 2013).

> [S]tatutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*Id.* (citations omitted). Likewise, to the extent Newton asserts an ineffective-assistance-of-counsel claim, our review is also de novo as such a claim has its basis in the Sixth Amendment. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

Newton also challenges the colloquy the court engaged in when accepting his stipulation to his prior OWI offense. We review that claim for the correction of errors at law. *See State v. Meron*, 675 N.W.2d 537, 540 (Iowa 2004).

## III. Constitutional Challenge to Section 321J.2(1)(c).

Newton contends his constitutional rights were violated in this case because the jury was allowed to convict him based on the presence of drug metabolites in his urine when testimony at trial established that the presence of drug metabolites in urine does not necessarily indicate the person is impaired. He asserts section 321J.2(1)(c) is unconstitutionally vague and not rationally related to the purpose of the OWI statute.[5]

---

[5] The State argues Newton did not preserve error on these constitutional challenges because Newton failed to raise these challenges within forty days of arraignment. *See* Iowa R. Crim. P. 2.11(2), (4) (providing any defense or objection capable of determination without trial may be raised by motion before trial and requiring defenses and objections based on defects in the institution of the proceeding or defects in the indictment or information to be raised within forty days of arraignment). Instead, Newton challenged the application of the statute to him at trial. Assuming without deciding that the constitutional

### A. Void for Vagueness.

There are three foundations for the void-for-vagueness doctrine:

First, a statute cannot be so vague that it does not give persons of ordinary understanding fair notice that certain conduct is prohibited. Second, due process requires that statutes provide those clothed with authority sufficient guidance to prevent the exercise of power in an arbitrary or discriminatory fashion. Third, a statute cannot sweep so broadly as to prohibit substantial amounts of constitutionally-protected activities, such as speech protected under the First Amendment.

*State v. Heinrichs*, 845 N.W.2d 450, 454 (Iowa Ct. App. 2013) (quoting *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007)). Newton asserts section 321J.2(1)(c) violates the first two foundations; he claims it is impermissibly vague because it fails to give individuals fair notice of when their conduct is prohibited and it leads to arbitrary or discriminatory enforcement. Because drug metabolites can be present in the system long after the impairment of the drug wears off, Newton asserts individuals will not know when the metabolites have been removed from the body so as to be able to drive without facing punishment. He also claims the statute allows for the prosecution of some individuals based solely on law enforcement's knowledge of the person's drug usage, not on the individual's impaired driving.

Iowa Code section 321J.2(1)(c) provides: "A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state in

---

challenge was untimely, the State did not object to Newton's late-filed challenge on timeliness grounds, nor did the district court deny the challenge based on timeliness. *See State v. Maestas*, 224 N.W.2d 248, 250 (Iowa 1974) (requiring constitutional objections to a statute as being vague and overbroad to be challenged "at the earliest available opportunity in the progress of the case"). Because the district court ruled on the merits of the challenge, we consider the issue to be preserved for our review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

any of the following conditions: . . . c. While any amount of a controlled substance is present in the person, as measured in the person's blood or urine."  Newton does not assert any of the words used in the statute are unclear; instead, he asserts a person would not know when he is in violation of the statute because he would not be aware of when the metabolites of a controlled substance still happen to be present in one's urine.  In *State v. Bock*, the defendant made a similar challenge to the alcohol alternative to the OWI statute.  357 N.W.2d 29, 33–34 (Iowa 1984).  There the defendant claimed that statute was "unconstitutionally vague because persons of common intelligence cannot know if their blood, breath, or urine carries an alcohol concentration which is proscribed by its terms."  *Id.* at 33.  The supreme court rejected the challenge noting:

> Although persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should, in the exercise of reasonable intelligence, understand *what type of conduct places them in jeopardy* of violating the statute. We believe a realization of this potential jeopardy of violating the statute is sufficient to satisfy the requirements of due process.

*Id.* at 34 (emphasis added).  While a person may not be aware of the precise moment the metabolites of a controlled substance leave the body, the statute does place a person on notice of the described the type of conduct (consuming controlled substances) that places the person in jeopardy of violating the statute. We conclude section 321J.2(1)(c) is not unconstitutionally vague because it gives "a person of ordinary intelligence fair notice of what is prohibited."  *Id.* at 33–34.

In addition, we reject Newton's claim that the statute is vague because it leads to arbitrary or discriminatory enforcement.  Before a urine or blood sample can be requested, the law enforcement officer needs to invoke the implied-consent

procedure, which requires the officer to have "reasonable grounds to believe that the person was operating a motor vehicle" while impaired. *See* Iowa Code § 321J.6(1); *see also State v. Childs*, 898 N.W.2d 177, 185 (Iowa 2017) ("The harshness of Iowa's flat ban is ameliorated by the fact that the motorist would be asked to submit to chemical testing only after the officer performed a lawful traffic stop and had reasonable grounds to believe the driver was impaired.").

Newton's vehicle and trailer were located in the ditch at a time when there were no adverse weather conditions. Newton was sitting behind the wheel with the engine running. His explanation as to how he came to be in the ditch was incoherent. He was confused as to the time of day, his location in relation to his destination, and whether he even possessed his wallet and driver's license. In addition, he failed the horizontal gaze nystagmus test and the lack of convergence test, yet there was no indication of the consumption of alcohol. We conclude the deputy's request for a urine sample in this case was not arbitrary. We therefore deny Newton's challenge to the statute on vagueness grounds.

**B. Substantive Due Process.** Newton also challenges the application of the statute in this case on substantive due process grounds. There are two parts to a substantive due process evaluation: "The first requires a determination of 'the nature of the individual right involved.'" *State v. Seering*, 701 N.W.2d 655, 662 (Iowa 2005) (citation omitted). Then we apply the analysis that is appropriate for the nature of the right:

> If a fundamental right is implicated, we apply strict scrutiny analysis, which requires a determination of "whether the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest." If a fundamental right is not implicated, a statute need only survive a rational basis analysis,

> which requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest."

*Id.* (citation omitted). Newton concedes a fundamental right is not implicated in this case, so we apply a rational basis review of the statute. Under the rational basis analysis, we are deferential to the legislature's judgment, though our review is not "toothless." *Hensler v. City of Davenport*, 790 N.W.2d 569, 584 (Iowa 2010). However, Newton "must negate every reasonable basis upon which the statute may be sustained." *King v. State*, 818 N.W.2d 1, 23 (Iowa 2012)

The purpose of chapter 321J is to reduce the number of deaths and injuries caused by impaired drivers. *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 594 (Iowa 2011) ("[W]e have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public."). While not addressing a constitutional due process claim, our supreme court has twice determined "[t]he legislature could *reasonably* have imposed such a ban because the effects of drugs, as contrasted to the effects of alcohol, can vary greatly among those who use them." *See State v. Comried*, 693 N.W.2d 773, 776 (Iowa 2005) (emphasis added); *see also Childs*, 898 N.W.2d at 183–87 (quoting with approval and affirming the *Comried* decision).[6] "It is not absurd for the legislature to enact a per se, or zero-tolerance, ban on driving with [a controlled substance] in one's body, given the absence of an available scientific test to determine what level of

---

[6] Newton asks that we reverse the supreme court's decision in *Comried*. "We are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). In addition, the supreme court has recently reaffirmed the *Comried* decision in *Childs*, 898 N.W.2d at 183–87.

[controlled substance] impairs driving." *Childs*, 898 N.W.2d at 185. We conclude the per se ban on operating a motor vehicle with any amount of controlled substance in one's body is rationally related to the legitimate government interest in reducing traffic fatalities and injuries from impaired driving. *See Loder v. Iowa Dep't of Transp.*, 622 N.W.2d 513, 516 (Iowa Ct. App. 2000) ("There being no reliable indicator of impairment, the legislature could rationally decide that the public is best protected by prohibiting one from driving who has a measurable amount of marijuana metabolites."). We thus conclude Newton's substantive due process claim fails.[7]

## IV. Habitual Offender Colloquy.

Next, Newton asserts the court failed to engage him in the proper colloquy when he stipulated to his prior OWI conviction. Subsequent to Newton's conviction, our supreme court has now defined "the scope of the inquiry" a district court must employ when accepting a defendant's stipulation to prior convictions for sentencing enhancements. *See State v. Harrington*, 893 N.W.2d 36, 45–47 (Iowa 2017). The court must "inform the offender of the nature of the habitual offender charge" and "inform the offender that these prior felony convictions are only valid if obtained when the offender was represented by counsel or knowingly and voluntarily waived the right to counsel." *Id*. at 45. The court "must also make sure a factual basis exists to support the admission to the prior convictions." *Id*. at

---

[7] We have similarly concluded section 321J.2(1)(c) does not offend substantive due process in *State v. Davis*, No. 14-1976, 2016 WL 1677591, at *4–5 (Iowa Ct. App. Apr. 27, 2016) (addressing claim through the lens of ineffective assistance of counsel) and in *State v. Hodges*, No. 10-0031, 2011 WL 944378, at *3–5 (Iowa Ct. App. Mar. 21, 2011) (same).

45–46. "[T]he court must inform the offender of the maximum possible punishment of the habitual offender enhancement, including mandatory minimum punishment." *Id.* at 46. "[T]he court must inform the offender of the trial rights enumerated in Iowa Rule of Criminal Procedure 2.8(2)(b)(4)." *Id.* The offender must also be informed "that no trial will take place by admitting to the prior convictions" and "that the State is not required to prove the prior convictions were entered with counsel if the offender does not first raise the claim." *Id.* Finally, "[t]he district court must inform the offender that challenges to an admission based on defects in the habitual offender proceedings must be raised in a motion in arrest of judgment" and "that the failure to do so will preclude the right to assert them on appeal." *Id.*

The State does not dispute that the colloquy in this case falls far short of the requirements announced in *Harrington*. Instead, the State asserts Newton did not preserve error on this claim due to his failure to include this claim in his motion in arrest of judgment. The State urges us to review this claim through the lens of ineffective assistance of counsel. However, the error-preservation requirement announced in *Harrington* is only applicable "prospectively." *See id.* at 43. Because Newton's conviction predated *Harrington*, we do not hold the lack of a motion in arrest of judgment against Newton. *See State v. Steiger*, 903 N.W.2d 169, 170 (Iowa 2017) ("Requirements of the enhanced-penalty hearing were not followed by the district court in this case, and the error preservation rule we established in *Harrington* was not in existence at the time."). Therefore, Newton's conviction for OWI second offense must be reversed, and this case is remanded for further proceedings consistent with the supreme court's decision in *Harrington* to conduct

a hearing on the prior conviction pursuant to rule 2.19.[8]  We affirm the jury's judgment of guilt on the present OWI conviction and the conviction for child endangerment.

## V.  Conclusion.

Because we conclude section 321J.2(1)(c) is not unconstitutionally vague and is rationally related to the purpose of the OWI statute, we deny Newton's due process challenge to his conviction.  However, because the court did not provide Newton a proper colloquy when accepting his stipulation to his prior conviction, we reverse his conviction and sentence for OWI, second offense, and remand this case for proceedings consistent with this opinion.

**REVERSED IN PART AND REMANDED.**

---

[8] Because we are reversing his sentence and remanding for further proceedings, we need not address Newton's final claim regarding the sentencing court's consideration of unproven offenses when determining his sentence.